DURADENE CO., Inc., v. MAGRUDER, Collector of Internal Revenue.
No. 6125.

District Court, D. Maryland.
Dec. 3, 1937.

David Hettleman, of Baltimore, Md. (Ottenheimer, Schimmel & Hettleman, of Baltimore, Md., of counsel), for plaintiff.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and Frederic G. Rita and Stephen J. Angland, Sp. Assts. to Atty. Gen., for defendant.

CHESNUT, District Judge.

Whether "permanent waving fluid" used in the hairdressing art is subject to the federal excise tax on certain toilet articles (section 603 of the Revenue Act of 1932 [26 U.S.C.A. § 1420 et seq. note]) is the question presented in this case. The plaintiff, a manufacturer, was required to pay the tax in the amount of $738.69, for sales made in the period August 26, 1935, to July 31, 1936. After its timely petition for refund was denied, this suit was brought to recover the tax so paid. It is said to be a test case affecting about $100,000 of annual tax assessments.

The taxing act (47 Stat. 169, 26 U.S. C.A. page 428, following section 1481, temporary act extended to July 31, 1937, Joint Resolution June 28, 1935, 49 Stat. 431, 26 U.S.C.A. pocket part 1936, p. 49, and further extended to July 31, 1939, by Resolution No. 48, 75th Congress, 50 Stat. 358, 26 U.S.C.A. pocket part 1937, p. 68), provides:

"Sec. 603. Tax on Toilet Preparations, etc. There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equiva- lent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, *cosmetics*, petroleum jellies, hair oils, pomades, *hair dressings*, hair restoratives, hair dyes, tooth and mouth washes (except that the rate shall be 5 per centum), dentrifrices (except that the rate shall be 5 per centum), tooth pastes (except that the rate shall be 5 per centum), aromatic cachous, toilet soaps (except that the rate shall be 5 per centum), toilet powders, *and any similar substance, article, or preparation, by whatsoever name known or distinguished;* any of the above which are used or applied or intended to be used or applied for *toilet purposes.*" (The most important wording has been italicized for convenience of discussion.)

The case has been submitted for decision on the pleadings and testimony, a jury having been waived by the parties by written stipulation.

The Collector defends the suit on the ground that the "permanent waving fluid" is both a "cosmetic" and a "hair dressing," or at least is an article similar thereto for toilet purposes; but the plaintiff contends that "the primary use of its product is to shorten the time required in deforming the hair after which, by separate and unrelated steps, and as an unrelated process, the hair is dressed."

To determine the question thus presented it is necessary to understand the function of the fluid in the process of giving a permanent hair wave. As to this the testimony is very full and explicit. The purpose of the operation is to make naturally straight hair curly. In practice the hair is first wound under tension around a short rod, moistened with the fluid (an alkaline solution) and then subjected to heat at the temperature of not less than 212 degrees F. The function of the fluid is to soften the hair, to make it more porous and absorptive of moisture, and finally retentive of the curling process produced by the operation. During the process the hair is subjected to three separate forces, (1) the stretching under tension, (2) the chemical reactions to the alkaline fluid, and (3) the force of the heat. The direct action of the fluid on the hair darkens and coarsens it, although in apparent effect the color is lightened by reason of its curled condition. To some extent the outer layers of the strands of hair are cracked and deteriorated by the chemical action of

the alkaline solution. After the whole head of hair (except for about an inch or two from the scalp, which must be left undone to protect the scalp from burns) has thus been rendered curly or kinky, the hair is arranged by hand into such form or shape as is desired, the operation being aided and rendered more lasting in effect, by the application of another fluid, containing some gum or similar substance. This latter fluid (Plaintiff's Exhibit No. 5) is known as "finger wave fluid," and is admitted to be taxable as a "hair dressing." It is obvious that the process is not intrinsically beneficial to the life and strength of the hair, but the resulting completed effect is considered to be beautifying to the feminine appearance.

The term "permanent" is only relatively fairly descriptive, as the natural hair grows out from the scalp at the rate of about one-half inch a month, thus requiring a repetition of the process in four or five months, called rewaving, when care must be taken to protect the ends of the hair, previously subjected to the chemical action of the alkaline solution, from further damage, by some protective covering such as a coating of oil.

In giving the permanent wave treatment, the hair may be wound from the outer ends inward toward the scalp, called the Croquinole method, or outward from near the scalp, called the spiral method. The plaintiff calls its fluid for the former method Durädene Croquinole, and the latter, Duradene Method. The preparation as made by the plaintiff contains boric acid, ammonia, sodium carbonate, bicarbonate of soda and water. Other manufacturers vary the constituents but all are of an alkaline nature. The finger wave solution sold by the plaintiff contains isopropanol (a form of alcohol) and gum Karaya. It is said the permanent wave fluid acts on the hair chemically, and the finger wave fluid physically only.

The plaintiff seeks to sharply distinguish the permanent wave fluid from the finger wave fluid with respect to taxability. It is said the whole process has two distinct stages, one the creation of the curly hair foundation in which the "permanent wave fluid" is used; and the other the special ornamental arrangement of the hair in which the finger wave solution is used, the latter phase of the process being called a "finger wave." It is conceded that the latter is taxable because it is applied directly to the hair to fashion and set it in a desired form and manner of appearance, and is not removed after use, and therefore constitutes a "hair dressing." But as to the permanent wave solution, it is contended that it is only a means to an end, and one element used in a process which precedes the dressing of the hair by the separate and unrelated finger wave. It is further said that the finger wave is no necesesary part of a permanent wave, and that it is in fact an extra. To the artist in hair dressing the distinction may fairly exist but to the layman it would seem to be very narrow and refined. When a man goes to a barber to have his hair cut he would not think the job complete if the barber did not brush his hair after cutting it; and there is even less reason to think women more careless of their public appearance. But conceding the technical trade distinction, it still remains true that the curly foundation is a necessary step towards the ultimate beautifying result, and the permanent wave fluid is an essential element in creating the final result; and in this sense at least it is not inaccurate to call it a "hair dressing."

But however this may be, the exact question here must be decided upon established legal principles. It is a problem in the construction of the words of a taxing statute; and they are words in general use with no hidden or occult meaning. Of course the taxpayer is entitled to the benefit of the doubt if one fairly exists. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211. And the words must be intelligible to those who must obey them. White v. Aronson (Nov. 8, 1937) 58 S.Ct. 95, 82 L.Ed. ——. But neither "cosmetics" nor "hair dressing" are new or ambiguous words. Cosmetics have been known and used since the times of the early Egyptians. Indeed we are told that their women practiced a primitive form of permanent hair waving by winding the hair on sticks, forming a mud pack around the wound hair, and then sitting in the sun. In this statute cosmetics is the general term really inclusive of many that are afterwards particularly mentioned in the statute, apparently for greater certainty. Thus cosmetics include hair oils, dyes and dressings, tooth pastes, washes and dentifrices, and toilet soaps, as will be found from the Encyclopedia Brittanica and text books dealing with the subject. See "Truth about Cosmetics" by McDonough (1937), and

"Modern Cosmetics" by Chilson (1934), both published by the Drug and Cosmetic Industry of New York. By this statute Congress has evinced an intention to broaden rather than narrowly limit the construction of the particularly named articles, if used for toilet purposes, by the expanding phrase "and any similar substance, article or preparation, by whatsoever name known or distinguished". There would seem to be no reason for a narrow construction of the word cosmetics as used in this context, although in some other contexts it might be proper to limit the general word by reason of the more particular afterwards used. Winslow Skate Co. v. United States (Ct.Cl.) 50 F.2d 299, 302.

In Webster's New International Dictionary, "cosmetic" is defined as "any external application intended to beautify or improve the complexion, skin or hair." This is quite broad enough to include the permanent wave fluids as above described. The plaintiff undertakes to contract the scope of the word as here used by testimony of trade witnesses that by their usage cosmetics does not include permanent wave fluid, which in their view apparently defies classification under any more general term, and in this respect is *sui generis*. A number of witnesses for the plaintiff so testified, with contradiction from only one witness for the defendant, a chemist attached to the Alcohol Tax Unit of the Bureau of Internal Revenue. But the trade books above referred to both discuss the permanent wave solution under the general title of cosmetics. Thus in Chilson the subject is discussed in the chapter entitled "Miscellaneous Hair Preparations" (p. 294); and see McDonough, Chs. 20 and 21, Permanent Waving of Hair, and Permanent Waving Solutions (pp. 200–221). And in an earlier book on Cosmetics by Theodore Koller (London 1920) the same subject (called hair curling washes) is treated on page 155 under the heading, "Cosmetic Adjuncts and Specialties." The trade witnesses would apparently narrow the scope of the word cosmetics to face powders, lotions, creams and other articles used for the skin alone and not for the hair, teeth or nails. Possibly this differentiation may exist in the trade owing to the tendency to specialization, but it is not permissible to so contract the word as known in history, literature and art, particularly in view of the statutory language which calls for a broad rather than narrow construction.

Again the plaintiff urges here, as was done for the taxpayer in White v. Aronson, supra (where a jig saw puzzle was held not to be a "game"), that the Commissioner of Internal Revenue in 1932 ruled that the article was not taxable and then reversed the ruling in 1935; and also that under the previous taxing acts of 1917 and 1918, containing similar wording (not in effect after 1921) no effort was made to tax permanent waving fluid although then in use. But these considerations, important as they were in the White Case, do not have similar significance here by reason of different conditions. The ruling of the Commissioner in 1932 was responsive to a letter from counsel for the taxpayer which, while not subject to any criticism for lack of frankness, nevertheless did not set out the use of the fluid with the significance shown by the testimony in this case; and while the fluid was somewhat used in 1918–1921, it was not until about 1925, after women's bobbed or shortened hair came into vogue, that its use became extensive. There is here really nothing to show that the subject came to the attention of the Commissioner until 1932, after the Revenue Act of that year went into effect. Nor is there any indication that Congress in reenacting the statute in 1932 had notice that the word cosmetics had been limited by trade usage, or doubts entertained as to its meaning in judicial decisions, as was disclosed in the White Case.

A well established general and uniform commercial usage of words used in a taxing statute affecting a particular industry is of course an important consideration in the construction of those words, and in some situations may be controlling over the ordinary dictionary definition; but that rule is in my opinion not applicable here for the reasons already given, and such cases as Philadelphia Storage Battery Co. v. Lederer (D.C.) 21 F.2d 320; Monroe Cider Vinegar Co. v. Riordan (C.C.A.) 280 F. 624, and Sonn v. Magone, 159 U.S. 417, 16 S.Ct. 67, 40 L.Ed. 203 (cited by the plaintiff's counsel) are distinguishable because presenting different problems of statutory construction.

It is also urged by the plaintiff that the article should not be taxed as a cosmetic or hair dressing because their purpose is

to beautify, while it is said the primary function of the wave solution is really to damage and not of itself to beautify the hair. But this argument seems to confuse the idea of primary or principal purpose of the use of an article as determining its classification for tax purposes (see Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051, and Sharp & Dohme v. Ladner [C.C.A.] 82 F.2d 733) with the direct or immediate effect of its use, disregarding the ultimate effect intended to be created. Here the wave solution is certainly not used for the principal purpose of intentionally damaging the hair, as this is intrinsically undesirable, but is an unavoidable incident in the process of obtaining a beautiful head dress of curly hair. The damage occasioned is not of itself a desirable effect but a necessary evil to accomplish the ultimate result desired.

The same argument is expressed in a somewhat different form, that the use of the wave solution is only a step in a process separate from and unrelated to the final act of dressing the hair by the finger wave. A closely analogous contention was rejected by District Judge Goddard in the recently decided case of Inecto, Inc., v. Higgins, Collector, in the Southern District of New York, (Nov. 17, 1937) 21 F.Supp. 418, in a tax case arising under the same statute, where the preparation called "Dysolvol" was held taxable as a hair preparation used for toilet purposes, although its particular purpose was to *remove* hair dyes and *prepare* the hair for dyeing. Another contention urged here and unsuccessfully there is that the article can only safely be used in professional beauty shops and not by the individual consumer. There is testimony in this case that to some extent the wave solution is sold to individuals for personal use, although not by the plaintiff; but whatever the fact, the contention is clearly unsound, as the character of the article for taxation is not thereby changed.

The conclusion of law is that the "permanent wave fluid" is taxable under the statute. It is certainly an article used in the hair dressing art, and is a specialty used only in that art. While its ingredients compose an alkaline solution the particular proportions are compounded for the special purpose only, and the solution as such has no other use. It is clearly also used for toilet purposes, as a lady's coiffure has always been considered a most important part of her toilet. As its function is, with other agents, to change the form or style of the hair from straight to curly, it may properly be said to be a hair dressing, whether the term "permanent wave" is considered to include the finger wave as a final touch to the hair, as is doubtless the general understanding of the customer, or is limited to the creation of the permanent wave foundation, as the phrase is said to be used by the professional beauticians. And as the word "cosmetics" properly includes preparations for the hair used for toilet purposes, the article is also taxable as a cosmetic. Even if the commercial usage as shown in this case could be held to so narrow the scope of these particular words as to exclude the wave solution, the statute would still cover the article as a similar preparation by another name. If the substance is not similar to hair dressings and cosmetics, it would seem to be like nothing else under the sun.

This construction of the statute does not unduly broaden the effect of the word "similar." The heading of section 603 is "Tax on Toilet *Preparations*, etc." (Italics supplied.) Various forms of articles for the hair are particularly named. They are all preparations for the hair and they are taxable only if intended to be used for toilet purposes. Hair dressings, hair restoratives and hair dyes are specifically mentioned. And the statute finally reaches any *similar* substance, article or *preparation*. The permanent wave solution is similar to these particularly named articles; similar in general composition, as all are chemical compounds of some nature; similar in that all are used as *preparations* for the hair; and similar in that all are used for toilet purposes. Indeed it is hard to think of any substantial dissimilarity when viewed from the standpoint of content, use or purpose; unless the plaintiff's argument, based on the direct and immediate effect, to the exclusion of the ultimate result desired, is to be accepted as sound, as in my opinion it should not be.

This conclusion compels a verdict for the defendant and makes unnecessary to the result here a consideration of another defense set up by the Collector based on section 621 of the same Revenue Act of 1932 (26 U.S.C.A. § 1420 et seq. note), which in effect precludes recovery of such taxes paid unless the taxpayer establishes that he has not "passed on the tax" to the purchaser. As the case is likely to be

appealed, it may be desirable to also rule on this defense. As to this, I find from the testimony that the plaintiff did not pass on the tax but itself sustained its burden. This is the categorical statement of the principal officer of the plaintiff not shaken by cross-examination or other circumstances. The plaintiff was evidently throughout contesting the payment of the tax; it was ignored in its reporting for other sales; and was not at any time itemized or otherwise referred to on its bills to customers, and the price of the article was not increased after the tax was made effective. The defendant has shown nothing to the contrary except the inference sought to be drawn from the fact that in assessing the tax one-eleventh and not one-tenth of the sale price to customers was taken as a measure of the ten per cent. tax, on the assumption that the sale price included the tax. But this action was not induced by the plaintiff or its counsel. At the most it merely acquiesced in a basis of assessment for a disputed tax liability which as a calculation did not prejudice it. The conclusion on this point is, I think, in accordance with the decided cases. United States v. Jefferson Electric Co., 291 U.S. 386, 405, 54 S.Ct. 443, 450, 78 L.Ed. 859; Skinner v. United States (D.C.) 8 F.Supp. 999, 1004; Mentholatum Co. v. Motter, Collector (D.C. Kan.) 15 Am.Fed.Tax Reports, 979, 980, appeal dismissed (C.C.A.) 71 F.2d 1013.

The defendant's contention on this point is that after the Commissioner ruled that the tax was payable, it must be conclusively presumed that the plaintiff's sale price included the tax, and that the plaintiff's net price was thus reduced by the amount of the tax, which on this theory was collected from the purchaser. This contention if sound would quite effectually preclude a taxpayer from ever successfully contesting a disputed tax, of this nature, unless he added the tax to the former price, and insisted that it be paid to him by the customer, while himself denying its legality. The position does not seem reasonable and, in my opinion, is not required by the statute.

Counsel for both parties have requested me to make special findings of fact and conclusions of law. As this suit is against the Collector and not against the United States the practice and procedure is properly governed by the Conformity Act (28 U.S.C.A. § 724) unaffected by the special procedure required by United States Code, title 28, §§ 761–764 (28 U.S.C.A. §§ 761–764), and the verdict to be entered is properly ordinarily a general verdict, and not a special verdict based on special findings. Nevertheless as the case is said to be a test case of importance, and as the parties specially requested findings of fact and conclusions of law in their voluntary stipulation waiving a jury trial, I have filed separate findings of fact and conclusions of law, consistent with this opinion.

Both parties have moved for a directed verdict, without requesting other specific legal instructions. I deny the plaintiff's motion with exception allowed to the plaintiff. It is unnecessary to rule on the defendant's motion. The verdict is for the defendant, and the clerk is instructed to so enter it.