# MENNEN CO. v. KELLY, Former Collector of Internal Revenue.

## Nos. L–6178 and C–494.

District Court, D. New Jersey.

July 3, 1941.

Lindabury, Steelman, Zink & Lafferty, by James L. R. Lafferty, all of Newark, N. J., for plaintiff.

William F. Smith, Acting U. S. Atty., of Newark, N. J., Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Carl J. Marold, Sp. Assts. to Atty. Gen., for the Government.

FORMAN, District Judge.

The above suits were consolidated for trial, and involve actions for the recovery of excise taxes and interest paid by plaintiff upon the sale of Mennen Antiseptic Oil and Kora Konia. The question presented herein is whether or not these products are taxable as sales of toilet preparations within the meaning of Section 603 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 608, providing as follows: "There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 10 per centum of the price for which so sold: Perfumes, essences, extracts, toilet waters, cosmetics, petroleum jellies, hair oils, pomades, hair dressings, hair restoratives, hair dyes, tooth and mouth washes (except that the rate shall be 5 per centum), dentrifices (except that the rate shall be 5 per centum), tooth pastes (except that the rate shall be 5 per centum), aromatic cachous, toilet soaps (except that the rate shall be 5 per centum), toilet powders, and any similar substance, article, or preparation, by whatever name known or distinguished; any of the above which are used or applied or intended to be used or applied for toilet purposes."

Article 22 of Treasury Regulations 46 promulgated pursuant to the above statute is as follows:

"The tax attaches to the sale by the manufacturer of the articles enumerated in section 603 and similar articles commonly or commercially known as toilet articles, which are used or applied, or intended to be used or applied, for toilet purposes. Any article advertised or held out to be suitable for toilet purposes, or for any purposes for which articles enumerated in the Act are customarily used, will be subject to the tax, regardless of the name by which it may be known or distinguished.

The tax attached to the sale by the manufacturer of all preparations which are used or applied or intended to be used or applied for toilet purposes or used in connection with the bath or care of the body, or applied to the clothing as a perfume or to the body as a toilet article. The fact that any particular product, preparation, or substance coming within the scope of the Act may have, or be held out to have, a medicinal, stimulating, remedial, or curative value does not exempt it from the tax, if it is commonly used as an adjunct to the toilet or for toilet purposes.

"The tax will not attach to an article which is not a finished product or is not susceptible of use for toilet purposes but is only suitable for use in the manufacture of articles subject to tax, or to any article or substance which has only an incidental or occasional use as a toilet preparation.

"Toilet soap is taxable whether in the form of a liquid, semiliquid, paste, flake, powder, or cake. Soaps and soap powders advertised or held out as suitable for toilet purposes or for application to the body, or parts of the body, as cleansing agents are taxable. Toilet soap advertised or held out as having medicinal properties, medicated toilet soaps, shaving soaps, creams and powders, and shampoo soaps and soap powders are taxable. A soap used chiefly for removing grease and stains from the hands, though capable of incidental use for cleaning kitchen utensils, is taxable as a toilet soap. Soaps which are made, advertised, held out, and sold primarily for general cleaning or laundry purposes, but which may have an incidental and trivial use as a toilet soap, are not taxable unless advertised or held out as suitable for toilet purposes. Shampoo oils and liquids not containing saponaceous matter are taxable as toilet preparations."

Plaintiff in 1930 placed on the market Mennen Oil to be used in the bath of the newborn baby. Newborn babies sleep about twenty hours daily, and consequently their bodies become dehydrated and their skins dried. In addition, their skins are susceptible to irritations and diseases. Since soap and water baths might have a deleterious effect upon the delicate, infantile skin, oil baths are used in the sanitation of their bodies. Incidentally, there is no novelty in this because as early as Biblical days this method was employed by the Egyptians. It serves as a lubricant for dried skin as well as a cleanser in that it loosens foreign matter attached to the skin which may then be rubbed off.

Shortly after Mennen Oil was placed on the market hospitalization of maternity cases increased and with the view that a medicated oil would prevent the dissemination of contagious skin diseases throughout the nurseries, and would be more appealing to the buying public, plaintiff substituted Mennen Antiseptic Baby Oil for its original product, its name later being changed to Mennen Antiseptic Oil because experience proved that it could be used by adults as well.

It is a compound of peanut oil (in substitution for sesame oil), cottonseed oil and mineral oil, slightly perfumed, containing three active ingredients; hydroquinone (the bactericide), hydroxyquinone (an antiseptic which also prevents rancidity), and chlorbutanol (which prevents itching and burning). The product is a little over 99% oil, and its medicinal ingredients and perfumery constitute less than 1%.

Plaintiff recommends this product for the following uses:

"Prevention and cure of impetigo of the newborn, prevention and cure of·diaper rash, prevention and cure of milk crust cradle cap,

"Chapped skin,
"Insect stings,
"Poison vine itching,
"Prickly heat or heat rash,
"Chafing,
"Sunburn,
"Windburn,
"Burns and scalds, and
"Eczematous conditions.

"Its antiseptic and germicidal effect upon the newborn body is advertised extensively. Specifically and as material herein, the following claims are made as well:

"It keeps the skin soft, velvety, and supple;...it will keep your baby sweet and lovely.

    *     *     *     *     *     *

"Its regular use keeps the skin soft, smooth and clear. It will not grow rancid, is not sticky, will not stain clothing or bed linen and is pleasantly scented.

    *     *     *     *     *     *

"Of course you want your own precious baby to be lovely; to be admired by all your friends. A lovely skin does make a lovely baby.

    *     *     *     *     *     *

"Many women have found that to rub oil into the skin before retiring tends to preserve and restore that smooth, transparent beauty which is characteristic of youth."

The major part of the testimony was directed to the medicinal value of the product in question, particularly its use as a preventive and cure of impetigo. It was shown that the product is extensively used in hospitals in the bath of the newborn, and as a means to prevent as well as cure skin diseases. Its antiseptic and germicidal effect was related by plaintiff's witnesses. Defendant's witnesses testified with regard to an experiment in a hospital wherein one nursery used the oil and another did not, resulting in cases of impetigo only in the nursery using the oil. These witnesses deny that the oil has any germicidal effect, and concede only that it is antiseptic when applied to certain types of germs.

With reference to Kora-Konia the case was offered to the court solely upon the basis of the product itself and the material as to use stated on the container. The product is a powder, available and adaptable for toilet use. Its uses are enumerated on the container, and include treatment for relief of prickly heat, sunburn, windburn, heat rash, poison ivy, skin scald, shingles and insect bites. These uses, it is submitted, are not toilet uses within the meaning of the statute, and the product notwithstanding its nature as a powder and its admitted availability as a toilet powder of a special and limited nature, should not be construed as taxable under the statute.

The Commissioner of Internal Revenue based his assessment upon the following grounds:

"A cosmetic is defined as a preparation intended to beautify or improve the complexion, skin or hair. The Mennen Antiseptic Oil is intended to be used or applied in the care and protection of babies' skin, to keep the same healthy, smooth, sweet and clear. It is also recommended for use by adults to soften and prevent dry skin and to relieve chafing and chapped, irritated skin conditions. The fact that it has antiseptic qualities and its use is chiefly for babies will not remove the article from the scope of the tax, since a preparation for the improvement of a baby's skin is as much a cosmetic as one for the improvement of an adult's skin. It is held therefore that the Mennen Antiseptic Oil is properly subject to tax at the rate of ten per cent of the price for which sold.

"The product Kora-Konia is a powder which is intended to be applied to the body to absorb perspiration, to prevent chafing and is recommended for use by athletes and golfers as a foot powder. Inasmuch as toilet powders are specifically enumerated in the Act and since the purposes for which the product Kora-Konia is sold are purposes for which toilet powders are generally sold, it is held that this product is also properly subject to tax at the rate of ten per cent of the price for which sold by the Mennen Company."

Plaintiff argues as follows with reference to the statute in question and the regulations pursuant thereto: First, Section 603, supra is derived from Section 907 of The Revenue Act of 1918, 40 Stat. 1125, which imposed a manufacturers' excise tax upon two classes of products—"toilet preparations" (subsection (a) (1) and "medicinal preparations" (subsection (a) (2), but its re-enactment omitted the latter subsection. Hence, it is clear that Congress did not intend to tax thereunder proprietary medicines. Secondly, the tax is obviously a luxury tax. Thirdly, the regulations except "any article or substance which has only an incidental or occasional use as a toilet preparation."

The latter point has been sustained by the courts in the cases of Mentholatum Co. v. Collector, D.C.Kan. Feb. 20, 1934, 40 F.Supp. 639 and Sharp & Dohme, Inc., v. Ladner, 3 Cir., 82 F.2d 733. In the first of these cases the court had before it the taxability of Mentholatum. Notwithstanding that its use was recommended "for tired feet" and "after shaving" the court concluded that its primary use was medicinal and not taxable under Section 603, supra.

In the second of the above cases the court concluded that Hexylresorcinol Solution S.T.37 was a medicine which might have an occasional use as a toilet article, and, hence, not taxable under Section 603.

With this premise established plaintiff contends its product is not a cosmetic, but a medicine with only an incidental use in the toilet. It is argued that the product is a pharmaceutical of therapeutic value, not decorative.

Defendant argues that even the statute of 1918 did not exclude taxation of toilet

articles as such, because they were medicated, and that the statute was completely repealed in 1921. Furthermore, the regulations herein were adopted in 1932, and it is contended that they have been impliedly approved by Congress.

It also argues that the statute should be given a broad interpretation since it provides that "any similar substance, article, or preparation, by whatsoever name known or distinguished" is likewise taxable, Duradene Co. v. Magruder, D.C., 21 F.Supp. 426, affirmed 4 Cir., 95 F.2d 999, and that the plaintiff's product comes within the statute's two requirements: (1) the article in question must be one named or a substance similar thereto, and (2) it must be either used or intended to be used for toilet purposes, Mione Mfg. Co. v. United States, 3 Cir., 114 F.2d 647.

Finally, it is contended that the oil is advertised as a toilet article and should be taxed as such since it has been judicially determined that advertisements to the public are binding between the taxpayer and collector. Mione Mfg. Co. v. United States, supra; Peroxide Chem. Co. v. Sheehan, 8 Cir., 108 F.2d 306; Red Star Yeast & Products Co. v. La Budde, 7 Cir., 83 F.2d 394. Aside from these representations to the public the government contends that the oil is actually and primarily a cleanser, its medicinal use if any being incidental, Peroxide Chem. Co. v. Sheehan, supra, and in no way affecting its primary nature, Mione Mfg. Co. v. United States supra, and that the addition of perfumery alone is sufficient ground for classifying it as a toilet article. Kreinheder Enterprises, Inc., v. Gentsch, D.C.N.D.Ohio Jan. 6, 1938;[1] Murphy v. Graves, D.C. Nov. 22, 1939.[1]

We prefer that our determination should not be controlled as a matter of law by plaintiff's advertisements and the addition of perfumery to its compound. The advertisements should not estop the plaintiff from asserting that its product is a medicine, because those assertions, though extolling cosmetic values, likewise recommend its value as a medicine, and in fact the emphasis is upon the latter. With reference to the addition of perfumery we do not agree that that alone should control the classification of the oil.

There remains only a factual question, and in this conclusion the advertisements and the addition of perfumery will be considered together with all other facts.

The source of controversy revolves around the definition of "cosmetic". From the standpoint of a layman, we agree that a cosmetic is considered as an article of decorative value, such as rouge, lip stick, mascara, powder, etc. These create fictitious appearances. Obviously, an oil would create per se nothing of that sort. In fact, an opposite result would be effected. Any beauty values it might have are produced indirectly by virtue of some physiological response to the application. Plaintiff's analysis seems to be in this fashion, and for that reason it concludes that its product is not a cosmetic.

The defendant cites the case of Duradene Co. v. Magruder, supra [21 F.Supp. 429], which defined "cosmetic" as "any external application intended to beautify or improve the complexion, skin or hair", as well as the various following definitions of the term cited by plaintiff: "A powder, paste, or other compound applied to the skin in order to improve its appearance." Funk & Wagnalls Standard Dictionary.

"Adjective: Pertaining to beauty, beautifying, improving beauty, particularly the beauty of the complexion.

"Noun: Any preparation that renders the skin soft, pure and white, or helps or professes to be able to help to beautify or improve the complexion." Century Dictionary & Encyclopedia.

"Adjective: Having power to beautify (especially the complexion.) * * *

"Noun: A preparation for beautifying the hair, skin or complexion. * * *" Oxford English Dictionary.

"Noun: Any external application intended to beautify and improve the complexion, skin or hair". Webster's International Dictionary, 1929.

Section 603 is broader than any of these definitions, because it includes designated cosmetics as well as detergents which a layman would admit to be a toilet article but hardly a cosmetic, and any similar substance as well.

Since the subject matter is not specifically designated by the statute, the real question is whether it is a similar preparation used or intended to be used for toilet purposes in which case we think the definition is less significant. Our answer to this

---

[1] No opinion for publication.

is that it is similar to a soap, because it is a perfumed cleanser. It is likewise similar to a cream which is included within the regulations, because it serves as a skin lubricant. It is recommended and used, and, therefore, intended for those purposes.

We do not think that the presence of about ¼ of 1% medication materially affects the result herein. The evidence, conflicting as it is, does not convince us that it is primarily a medicament. The experiments of plaintiff's bacteriologist and his conclusion that the product in question is antiseptic and germicidal is not preclusive. We do not know but that the same results would have been accomplished if the product minus the active ingredients had been used in the experiment. We conclude that the active ingredients are only incidental to the primary purpose of the product.

With regard to Kora-Konia the product has been submitted to us as self-demonstrative in the form of Exhibit F—". It is a powder with alleged healing properties. The taxability of medicated powders as a toilet preparation has been upheld by the Commissioner of Internal Revenue. S.T. 693.1933—2 Cu.Bull. 312. Since we have no evidence before us, we must follow the ruling of the department in this respect.

The claim for refund is denied.