**B & M COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 71-1320.**

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1971.

Rehearing Denied Jan. 18, 1972.

C. Scott Edmundson, Jr., Meridian, Miss., Roland J. Mestayer, Jr., Pascagoula, Miss., Louis H. Watson, Jackson, Miss., Mestayer & Knight, Meridian, Miss., for plaintiff-appellant.

Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., Jane Edmisten, Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C.. for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Taxpayer, a Mississippi corporation, appeals from a decision by the District Court, sitting without a jury, holding that Taxpayer was not entitled to a refund of manufacturer's excise taxes in the sum of $61,588.09 paid by it during the period July 1, 1966 through June 30, 1969.[1] The Government has conceded

---

1. The Trial Court, however, additionally concluded that "plaintiff has overpaid the excise tax mentioned in this action, or involved in this action, by an amount equal to the taxes paid on the taxes included in the sales price of the poles, and to that extent plaintiff is entitled to recover taxes erroneously paid, with legal interest, as provided by law." This con-

clusion is inconsistent with the Trial Court's rejection of the principal amount claimed in refund. If the greater part of the claim has been rejected because of the conclusion that the tax was passed on to customers, that reasoning would apply with equal force to the amount of overpayment which the Trial Court awarded in its judgment.

that the taxes were erroneously collected and the only issue before this Court is whether the Taxpayer assumed the economic burden of the tax, in which event it would be entitled to a refund, or whether, as the District Court found, it passed the burden on to its customers.

The District Court, in an oral opinion rendered from the bench, found that Taxpayer failed to meet the burden imposed on it by law to show that Taxpayer "has not included the tax in question in the price of the article with respect to which it was imposed, and has not collected the amount of such tax from the person who purchased the article from it." We disagree and, therefore, reverse.

The Government contends, in line with the District Court findings, that Taxpayer adjusted its sales prices upward to include a 10% manufacturer's excise tax.

Taxpayer contends that it paid the tax out of its profits by applying the 10% to the gross sales.

The applicable statute in this case is Section 6416(a) (1) (A) of the Internal Revenue Code of 1954 [26 U.S.C. § 6416 (a) (1) (A)]. The subsection reads as follows:

"§ 6416. *Certain taxes on sales and services.*

"(a) *Condition of allowance.*

"(1) *General rule.*—No credit or refund of any overpayment of tax imposed by chapter 31 (retailers taxes), or chapter 32 (manufacturers taxes) shall be allowed or made unless the person who paid the tax establishes, under regulations prescribed by the Secretary or his delegate, that he—

"(A) has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from

the person who purchased such article;

. . . ."

Taxpayer, B & M Company, Inc., is a Mississippi corporation, with its principal place of business in West Point, Mississippi. It is in the business of selling bamboo fishing poles and assorted sporting goods to wholesalers and retailers throughout the United States, which items are imported from Japan and other countries. Wilson Simmons and his wife are the sole owners of all the outstanding stock of the corporation. The only items at issue here are certain types of jointed bamboo cane fishing poles which are cut into sections and fitted with metal ferrules, and were sold by the corporation from July 1, 1966 through June 30, 1969.

Taxpayer corporation acquired the business from Wilson Simmons in December 1961 when the corporation was organized. Prior to incorporation, from 1947 through December 1961, the enterprise had been operated under the name of B & M Company, with Simmons as the sole proprietor. Originally, Simmons manufactured the fishing poles himself. However, in about 1958 or 1959 he began importing them from Japan as he "thought it would be cheaper." Under Rev.Rul. 58–425, 1958–2 C.B. 804, the Internal Revenue Service concluded that jointed bamboo cane fishing poles were "fishing rods" within the meaning of 26 U.S.C. § 4161 and subject to manufacturer's excise tax.[2] Accordingly, in 1959 a federal excise tax deficiency was assessed against Simmons on the poles for the years 1950 through 1957. Part of the assessment was paid by Simmons. Litigation followed in which Simmons was successful (see Simmons v. United States, 5 Cir., 1962, 308 F.2d 938) and the amount paid by Simmons was re-

2. Section 4161 of the Internal Revenue Code of 1954 (26 U.S.C. § 4161) reads as follows:

"There is hereby imposed upon the sale of fishing rods, creels, reels, and artificial lures, baits, and flies (including parts or accessories of such articles sold on or in connection therewith, or with the sale thereof) by the manufacturer, producer, or importer a tax equivalent to 10 percent of the price for which so sold.

funded to him and the unpaid assessments were abated.

Following the tax deficiency assessment against Simmons, he, as sole proprietor of the business, voluntarily paid excise taxes through 1961. When the business was incorporated in December 1961, the corporation continued these payments through the second quarter of 1969. Thereafter, Taxpayer discontinued paying taxes and filed this present suit for refund in 1970. Refund for taxes paid prior to the third quarter of 1966 was not claimed because of the applicable statute of limitations. During the pendency of the suit, the Commissioner of Internal Revenue, by Rev.Rul. 70–548, 1970–2 C. B. 265, reversed his previous position expressed in Rev.Rul. 58–425, supra, and concluded that Section 4161 does not apply "to sales of bamboo cane poles regardless of whether they are merely straightened, scraped, and varnished, or whether, in addition, they are cut into sections and fitted with ferrules or other means whereby they may be joined together." As already stated, the Government concedes that the taxes were erroneously collected, but contends that Taxpayer, having passed the economic burden of the tax on to its customer, is not entitled to a refund because of alleged unjust enrichment to Taxpayer.

At the trial four witnesses testified on behalf of Taxpayer—Mr. and Mrs. Wilson Simmons, president and secretary of appellant corporation, respectively; John T. Watkins, accountant and notary, who had been engaged by Taxpayer for the five preceding years to prepare its income tax returns and perform related services; and William E. Sullivan, Internal Revenue agent, employed in the Excise Tax Division as a specialist. The Government called no witnesses.

Mr. Simmons testified to the manner in which the corporation conducts its business. About once a year he travels to Japan to purchase merchandise for the following season. Upon his return, he tentatively determines sales prices. These prices are usually those used the previous year, adjusted for increase or decease in suppliers' prices. At Trade Shows held in late summer, Simmons exhibits and compares his merchandise with that of competitors and adjusts his prices to meet those of competitors on identical items. The prices are listed in printed catalogs which are sent to potential purchasers. The sales price of the fishing poles was not increased in 1959 when the deficiency assessment was made against Simmons as sole proprietor,[3] nor was the price decreased after the corporation discontinued filing excise tax returns in 1969. No adjustments were ever made in the sales price to reflect the manufacturer's excise tax during the period when the corporation paid the excise tax. There was no overall or across-the-board increase in prices since 1957. No mention of manufacturer's excise tax was made either in the catalog or the invoices sent to customers. In 1961 the corporation voluntarily began paying excise taxes, having been advised by counsel to do so, but Simmons

---

3. A failure to increase prices following the imposition of an assessment for excise tax is a factor to be considered in determining whether Taxpayer has satisfied the requirement of the statute allowing refunds; see Con-Rod Exchange, Inc. v. Henricksen, W.D.Wash., 1939, 28 F.Supp. 924; and although this element is not conclusive evidence that the Taxpayer has assumed the burden of the tax it should be given significance in relation to the attending circumstances. See Vogel v. Knox, Minn., 1957, 147 F.Supp. 10. Cf. Duradene Co. v. Magruder, Md., 1937, 21 F.Supp. 426, 431, in which the contention was made by the Government that after the Commissioner ruled that the tax was payable, it must be conclusively presumed that the plaintiff's sale price included the tax. The Court said: "This contention if sound would quite effectually preclude a taxpayer from ever successfully contesting a disputed tax, of this nature, unless he added the tax to the former price, and insisted that it be paid to him by the customer, while himself denying its legality. The position does not seem reasonable and, in my opinion, is not required by the statute."

felt that the tax would eventually be refunded because of his belief that the fishing poles in question were not taxable. On cross-examination Simmons said that the corporation realized a greater profit by importing the poles instead of manufacturing them, because of the increase in volume. He reiterated, however, that the price structure did not change as a result of the importation.

Mrs. Simmons testified that at all times during the period at issue, the corporation sold its articles at the list price shown on the catalog sheets. The sheets show the suggested list price and a discount of 50% and 10% of the list price allowed prospective purchasers. The gross profit on the merchandise is computed by deducting the list price shown in the corporation's catalog from the cost sheets of the supplier in Japan.

John Watkins, a member of the American Institute of Certified Public Accountants and the Mississippi Society of Certified Public Accountants, testified that he examined the Taxpayer's records for the period in question to determine the manner in which the excise tax was computed. This tax account is classified as "other expenses" on the account chart and in the general ledger of the corporation. The excise tax was computed by applying the appropriate rate against the gross sales price, that is, by taking 10% of the amount charged. It was his conclusion that the excise tax had not been passed on to the customers. It was significant to him in reaching this conclusion that the excise tax was not shown on the invoices and that the records of the corporation reflected no accounts for excise tax liability. If the tax had been passed on to the customer it would have been included in the sales price. In preparing Taxpayer's federal income tax returns for the period in question, Watkins said that he considered the excise tax to be a tax borne by Taxpayer. When asked what he believed would have been the proper accounting method if he had considered the excise tax to have been collected from Taxpayer's customers, he said:

"If it had been included in the invoice separately stated thereon, and if the liability account had been established at the time the entries were recorded, then it would not appear at all on the income statement of the corporation. If it is considered as being passed on, then, in my opinion, the proper classification would be to deduct it from the gross sales of the corporation in arriving at net sales."

William Sullivan, an Internal Revenue agent and federal excise tax specialist, testified that at the request of the United States Justice Department he made an examination of Taxpayer's records for the purpose of determining whether or not the excise tax for the period in question had been included in the prices charged customers. He concluded that the tax had *not* been passed on. When asked for the basis of his conclusion, Sullivan said:

"There were three elements that I took into consideration in reaching this conclusion; one, I examined a testing, I tested the invoices, this sales, [sic] these sales invoices or the retained copies of such, and found no mention of the federal excise tax on the sales invoices. Two, I inspected samples of brochures, price lists, and so forth in the office of the taxpayer and found no mention of federal excise tax on these sales brochures and price lists. Third, I asked Mrs. Simmons to show me how she computed the tax, and using the test period of December, 1967, I had her compute the tax as it was reported on the income, on the excise tax returns for December, 1967. In her computations the method that she used, ten per cent of her gross selling price, after certain excludable items had been deducted to arrive at the amount of tax."

He did not examine the profit and loss statements of the corporation in determining the treatment of the tax but said that Taxpayer had furnished for his inspection all the records he requested.

The District Court nevertheless disregarded the professional opinions of Tax-

payer's accountant and the Government's own tax expert and based its conclusions entirely on inferences which it drew from the record and testimony. The Court questioned Taxpayer's statement that it met competitors' prices in setting its own price and placed great emphasis on the fact that Taxpayer earned a considerable profit during the years in question and deduced therefrom that Taxpayer necessarily collected the taxes from its customers. To illustrate the Trial Court's findings set out in detail the net profits, gross sales and corporation salaries of the Taxpayer during each of the years beginning with 1962 and ending with 1969, after having prefaced this recitation with its belief of the importance of considering such facts. The Trial Court then stated:

"I think it is quite clear from the testimony in the case that the excise taxes were considered in arriving at the sales price. ' . . . Mr. Simmons testified that if he was losing money on any of his articles he just discontinued selling them; that if he couldn't make a profit on the sales, he didn't sell them, but discontinued the sale. *I think it is reasonable for the Court to infer* that Mr. Simmons took into consideration the fact that he would have to pay these excise taxes, and included the taxes in arriving at what he would have to get for his merchandise. Otherwise, the Court would have to assume that he just met competitor's prices and sold his merchandise at a loss, if the only criterion used in connection with fixing the price of his merchandise was the other fellow's price. If he couldn't sell at the price fixed by the competitor—and take care of all of the expenses, including the excise tax, and yet make a profit, his company would soon go broke. *But, it is quite apparent from the tax return in evidence that he was far from that kind of a situation in the business.* So the Court must *infer* and hold that he took into consideration this excise tax in arriving at the amount at which he would sell his products." (Emphasis supplied.)

█ In so inferring the Court failed to take into consideration the uncontradicted evidence showing that there was sufficient gross profit realized from the sale of the jointed fishing poles as well as from other nontaxable merchandise, to take care of all expenses including excise taxes, without the necessity of Taxpayer passing on the tax burden to its customers. We disagree with the Trial Court's inference for its import is that any taxpayer conducting a profitable business is deemed to have passed on the economic burden of the excise tax to its customers. If this were so, the statute providing for refunds for overpayment of excise taxes could be successfully invoked only by taxpayers suffering a loss in such business. Such an interpretation of the statute unreasonably extends its provisions by implication. The statute requires of a taxpayer seeking a refund only that he establish "that he has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from the person who purchased such article." 26 U.S.C. § 6416(a) (1) (A).

The rule to be followed in interpreting tax statutes has been expressly established by the Supreme Court. In Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917), we find the following pertinent language:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

See also to the same effect United States v. Merriam, 263 U.S. 179, 187–188, 44 S.Ct. 69, 71, 68 L.Ed. 240 (1923); Tandy Leather Company v. United

States, 5 Cir., 1965, 347 F.2d 693, 695; 51 American Jurisprudence, "Taxation," § 316.

The Trial Judge rejected Simmons' contention that he thought he would eventually recover the taxes erroneously collected. The Court said:

"Mr. Simmons contends that he thought at some time he would be able to recover these taxes because he felt they were unlawfully imposed upon him. However, the Court cannot find this to be a fact from the evidence in this case, because the Court feels that if Mr. Simmons had held that view about it, he would have started proceedings either to have the tax declared invalid or to recover the taxes that he had paid. Yet he waited for eleven years before refusing to pay the tax and before bringing an action to recover the taxes paid by him, and, of course, at this time, he could only bring an action for the taxes which had been paid and were within the period of the statute of limitations."

The Court said further in this regard:

"Now, as I have stated, the evidence shows and the Court holds, that the corporation voluntarily paid these taxes over the years; and that those in charge of the corporate affairs took no action to recover the taxes, or to resist the payment thereof, until the end of the second quarter in 1969. *That indicates to the Court that Mr. Simmons, in the operation of the corporate business, considered the excise taxes as a part of the cost of the merchandise sold."* (Emphasis supplied.)

It is clear from the quoted language that the District Court was relying on his inference that the voluntary payment of taxes by the corporation and its delay in claiming a refund was tantamount to its intention to include the taxes in the price of its merchandise and of the acceptance by Simmons of the validity of the tax. However, we are unable to find from the testimony or the record a basis for the Trial Court's conclusion that Simmons accepted the validity of the tax.

No excise tax was paid by Simmons until the Commissioner made the deficiency assessment. The amount then paid was refunded and the remainder of the assessment abated as the result of his resort to legal action and our decision in 1962, Simmons v. United States, supra, reversing the District Court and upholding Simmons' interpretation of the statute. The taxes which were later voluntarily paid were paid on advice of counsel. However, as a result of the previous litigation Simmons was aware of the distinction between "fishing rods" subject to excise tax and the fishing poles sold by him. He also testified that when he filed his claim for refund he was not aware of the statute of limitations. A more reasonable conclusion would be that despite the delay in claiming the refund, Simmons voluntarily paid the tax, although contesting its validity, in order to avoid possible penalties and interest on unpaid taxes should he not ultimately prevail.

█ █ The material facts are not in dispute, and there were no credibility choices for the Trial Judge. All of the witnesses were called by Taxpayer and their testimony is in accord, including the testimony of the Internal Revenue Service tax expert. The Government used the "generally fruitless expedient" of attempting to support its contentions with Taxpayer's proof—it offered no witnesses. See Kirby Lumber Corporation v. Phinney, 5 Cir., 1969, 412 F.2d 598, 599. The conclusions made by the District Court are the result of its interpretation of the evidence introduced. Therefore, on this appeal we need consider only the inferences and conclusions drawn by the Trial Court from the undisputed evidence, "free of the restraining impact of the so-called 'clearly erroneous' rule." Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219; Kirby Lumber Corporation v. Phinney, supra, 412 F.2d at 600; United States v. Temple, 5 Cir., 1966, 355 F.2d 67, 68 (dissenting opinion). Taxpayer, of course, carries the burden of establishing the validity of its claim for a tax

refund. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). This it has done.

After a careful consideration of the record we find ourselves in disagreement with the District Court's opinion, and hold that Taxpayer is entitled to recover the entire amount for which it sued.

Reversed.