**WORTHINGTON PUMP & MACHINERY CORP.**

**v.**

**UNITED STATES.**

No. 50435.

United States Court of Claims.

July 13, 1954.

Elliott Goldstein, Atlanta, Ga., for plaintiff. Edward E. Dorsey, B. D. Murphy, and Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., were on the brief.

John A. Rees, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This is an action under the court's general jurisdiction to recover certain excise taxes erroneously collected.

During the period February 1946 through May 1947 the plaintiff sold certain air conditioning machines to the Delta Air Conditioning and Heating Company, hereafter referred to as Delta. Plaintiff had paid excise taxes on these units to the United States and in turn had billed to and collected the amount of these taxes from Delta. Later the Bureau of Internal Revenue ruled that the taxes had not been due at the time they were paid but rejected plaintiff's claim for refund.

Delta was engaged in selling air conditioning, heating and refrigeration units, both at wholesale and retail; some of the air conditioning units were sold plain, others were sold under contract prices that included both the unit and the service of installation. Installation was sometimes a rather complicated process and could include engineering, planning, sheet metal working, plumbing, carpentering and electrical services. It is as to units in this second classification that the plaintiff seeks to recover the tax.

The plaintiff alleges that Delta did not pass on to its customers the tax on units sold under installation contracts. To prove this plaintiff produced certain evi-

dence relating to Delta's business operations. Delta was new in the air conditioning business and in order to attract customers adopted the policy of meeting or underbidding the lowest price of its competitors. The price was quoted without any advance knowledge of what the cost of executing the contract would be, with the exception of the cost of the tax-paid machine. A qualified accountant testified, on the basis of sampling a certain number of these contracts, that the costs, as subsequently computed, did exceed the contract price in a major portion of the jobs. He conceded, however, that some jobs were done at a profit. Although Delta sold these tax-paid machines over a period of two fiscal years, the accountant analyzed Delta's financial condition only for the fiscal year ending January 31, 1948. During the fiscal year 1948 Delta suffered a substantial net loss, particularly on its air conditioning operations where it amounted to 10.10 percent of air conditioning sales. However, only ten of the transactions on which plaintiff bases its claim occurred in the fiscal year 1948 and these involved an excise tax amounting to $767.23. Finally, the accountant made a comparison between Delta's average selling price on its average unit during the periods before and after the tax ceased being collected. He found that the average selling price was slightly lower when the tax was collected than when it was not.

Plaintiff in seeking to press its claim must fulfill all the statutory conditions which Congress has imposed in respect to it. The plaintiff is apparently suing to recover a tax levied on air conditioners under section 614 of the Revenue Act of 1942, 56 Stat. 978, 26 U.S.C. chapter 29, section 3405. In relation to refunds under chapter 29, section 3443 (d) provides:

"No overpayment of tax under this chapter shall be credited or refunded (otherwise than under subsection (a)), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

The Commissioner has issued a regulation [1] with respect to this subject which reads, in part, as follows:

"Sec. 316.94. Credits and refunds.—* * *

" * * * In all cases where a person overpays tax, no credit or refund shall be allowed (except as provided in the preceding paragraphs), whether in pursuance of a court decision or otherwise, unless the taxpayer files a sworn statement explaining satisfactorily the reason for claiming the credit or refund and establishing (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has either repaid the amount of tax to the ultimate purchaser of the article or has secured the written consent of such ultimate purchaser to the allowance of the credit or refund. In the latter case the written consent of the ultimate purchaser must accompany the sworn statement filed with the credit or refund claim. For the purpose of the tax the 'ultimate purchaser' is a person who purchases an article (1) for consumption, or (2) for use in the manufacture of other articles and not for resale in the form in which purchased. The statement supporting the credit or refund claim must also show whether any previous claim for credit or refund covering

---

1. Treasury Regulation 316.94, C.F.R. (1940 Supp. Bk. 2).

the amount involved, or any part thereof, has been filed with the collector or Commissioner."

The statute provides then that the plaintiff must either show that he himself has borne the burden of the tax or that he has repaid or obtained the consent of the "ultimate purchaser." The pleadings admit that the plaintiff did not itself bear the burden of the tax but was completely reimbursed by Delta. Nor has there been any allegation or proof that plaintiff has reimbursed anyone. Plaintiff's right to recover depends, therefore, on its being able to show that it filed with the Commissioner the "written consent of such ultimate purchaser to the allowance of the credit or refund."

· There is in evidence a document from the files of the Bureau of Internal Revenue which indicates that the plaintiff has at least in form complied with the requirements of the statute. It is entitled "Affidavit of Ultimate Vendor" and, by Burton B. Goldstein, President, on behalf of Delta, consents to the allowance of a credit or refund to the plaintiff for taxes collected on the units which are here under discussion.

The main question to be decided is, therefore, whether or not Delta is an "ultimate purchaser" within the meaning of section 3443. The section first came into the law with the Revenue Act of 1932, 47 Stat. 169, where it appeared as section 621(d), 47 Stat. 268. The legislative history on this proviso is meager. The report of the Ways and Means Committee speaking of section 605(e) in the original bill said, at page 39:

"Subsection (e) is an important and just provision which will encourage agreements by taxpayers and discourage litigation. In many cases the tax will be passed on to consumers. No manufacturer or dealer should be permitted to recover an overpayment which in fact has been borne by the purchasers. Provision is therefore made against credit or refund of overpayments unless the taxpayer can show that he has not passed on the tax or that he has reimbursed the ultimate purchaser or obtained his consent." [H.Rep. 708, 72d Cong., 1st Sess.]

From this one may fairly conclude that Congress intended that only those persons who actually had to bear the tax should benefit by any refund the Treasury might make. Undoubtedly it was assumed that the "ultimate purchaser" would look to his own interest before he gave the consent required by the statute.

The court does not believe that Delta's installation services, extensive though they were, amounted to the use of plaintiff's units "in the manufacture of other articles and not for resale in the form in which purchased." But under our interpretation of the statute it always remains open for the plaintiff to show that it has the consent of the person who actually bore the tax.

So far as we are able to determine no prior cases have been reported where the taxpayer based his right to recover on an alleged consent of the ultimate purchaser. A number of cases have arisen under similar provisos of prior revenue acts and a statute providing for recovery of the unconstitutional processing tax levied in connection with the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. Cases under section 3443 of Title 26 U.S.C., supra, have involved principally the proviso that the plaintiff must not have "included the tax in the price of the article with respect to which it was imposed". This formula appears to have a broader meaning. In Luzier's, Inc. v. Nee, 8 Cir., 106 F.2d 130, 134, the court said, in regard to it:

"So here the plaintiff must not only show that it is entitled in equity and good conscience to recover against the Collector, but it must meet the statutory requirement and establish that it has not passed the tax on to the purchaser of its products, and as a corollary thereto, that it has borne the economic burdens of the tax and has not shifted the same to its customers. * * *"

We think that a similar interpretation ought to govern that part of section 3443 which is in issue here.

■■ To find out who bore the burden of tax involves a determination of fact. When this court considered a claim for refund under a similar provision of an earlier revenue act, it said, in Boyle Valve Co. v. United States, 38 F.2d 135, 137, 69 Ct.Cl. 129, 133–34:

> " * * * The determination whether the tax was collected by the manufacturer directly or indirectly from the purchaser; that is, whether it was added to the purchase price of the article upon the sale of which the tax was imposed, either as a separate item or as a part of the sales price, is an ordinary question of fact; * * *."

Before considering the factual elements entering into the determination it may be helpful to make a few observations on general principles involved in cases of this kind.

At the outset it must be noted that under ordinary competitive conditions no tax can be passed on completely since a rise in price has the tendency of reducing the volume of business. It is for this reason that the problem of determining the tax burden is so difficult since it involves in most cases a question of degree. Secondly, the fact that a firm is making a profit or loss does not in itself determine whether or not it has passed on the tax. The only test is whether the seller has made a profit less than or sustained a loss greater than had the tax not been imposed on him. Nevertheless, the fact that a loss has occurred shows that the seller was unable to recover the total costs which he incurred in connection with the particular transaction. The tax may be deemed to have been absorbed to the extent that the loss is attributed to the tax, rather than to the other costs of the transaction.

Three variables enter into changes in profit or loss: the tax, all other costs, and the price the seller obtains for his article. How these variables fluctuate with the imposition or removal of the tax and comparisons with the same factors of other producers and the market as a whole are of particular significance on the question of burden. These same considerations have played an important part in past judicial decisions on the subject as an examination of the cases will disclose.

Courts have laid great stress on an increase in price associated with the imposition of tax as indicating a shift of the tax burden. Cudahy Packing Co. v. United States, 7 Cir., 152 F.2d 831; United States v. H. T. Poindexter & Sons Merch. Co., 8 Cir., 128 F.2d 992; Honorbilt Products, Inc., v. Com'r of Internal Revenue, 3 Cir., 119 F.2d 797; Lee Rubber & Tire Corp. v. United States, D.C., 49 F.Supp. 6; C. M. McClung & Co. v. United States, 35 F.Supp. 464, 92 Ct.Cl. 275. This interpretation prevails even where other costs had also risen. Vennell v. United States, D.C., 36 F.Supp. 646, affirmed 3 Cir., 122 F.2d 936; Luzier's, Inc., v. Nee, supra; Wm. Filene's Sons Co. v. White, D.C., 30 F. Supp. 414. In some cases the price increase was explained by other causes, such as a rise in other costs, and the tax was held not to have been passed on. C. B. Cones & Son Mfg. Co. v. United States, 7 Cir., 123 F.2d 530; American Chain Co. v. Hartford-Connecticut Trust Co., 2 Cir., 86 F.2d 105; Hutzler Bros. Co. v. United States, D.C., 33 F.Supp. 801. Where there was no increase in prices and there were other facts indicating that the seller had absorbed the tax, it was held that the tax was absorbed. Duradene Co. v. Magruder, D.C., 21 F.Supp. 426, affirmed 4 Cir., 95 F.2d 999; Con-Rod Exchange v. Hendricksen, D.C., 28 F.Supp. 924; University Distributing Co. v. United States, D.C., 22 F.Supp. 794.

■ The courts have also emphasized in this connection the intention or attempt to pass on the tax. Needless to say mere intention cannot overrule the objective criterion of whether or not a change in the seller's actual economic situation has taken place. But, in the

848

absence of better data, the attempt or intent to produce a certain result is taken as some evidence of its actual occurrence. Where there was a conscious attempt to pass on the tax by billing it separately on the invoice, the tax was passed on. United States v. Jefferson Electric Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; American Chain Co. v. Hartford-Connecticut Trust Co., supra. On the other hand, in C. B. Cones & Son Mfg. Co. v. United States, supra, the court held that the plaintiff had absorbed the tax even though there was evidence of its intention to pass it on.

The lack of a conscious attempt or intent to pass on the tax has been variously interpreted. Where the sales contract was made before the plaintiff knew of the tax this was sufficient to show that he had absorbed it. Einson-Freeman Co. v. Corwin, D.C., 29 F.Supp. 98 (reversed on other grounds, 2 Cir., 112 F.2d 683). In some cases it was thought that the tax passed on where, together with other facts, there was no way of showing a conscious attempt to pass it on. Duradene Co. v. Magruder, supra; Hutzler Bros. Co. v. United States, supra. In United States v. Arkwright Mills, 4 Cir., 139 F.2d 454, and in Con-Rod Exchange v. Hendricksen, supra, the courts stressed that plaintiffs' price increases were based on their policy of following the prices of competitors and thus did not indicate their individual intention to raise prices. Other cases, however, have attached no determinative significance to the fact that there was evidence of the seller's intention to pass on the tax. Cudahy Packing Co. v. United States, supra; United States v. Cheek, 6 Cir., 126 F.2d 1; Andrew Jergens Co. v. Conner, 6 Cir., 125 F.2d 686; Honorbilt Products v. Com'r of Internal Revenue, supra; Campana Corp. v. Harrison, 7 Cir., 114 F.2d 400; Lee Rubber & Tire Corp. v. United States, supra.

Two cases which are closely related to the facts of this controversy deserve special mention. In Vennell v. United States, supra, there had occurred contemporaneous increases of prices and other costs so that the seller was apparently suffering a loss. The court said, 36 F. Supp. at page 648:

"* * * The fact of continued net losses cannot operate to impair the effect of the evidence that the prices at which the goods were sold were set with a view to recover the tax paid."

In United States v. Arkwright Mills, supra, on the other hand, the market price for plaintiff's goods was decreasing while its costs were increasing. The plaintiff proposed the following measure of its tax burden in connection with inventories it had on hand when the tax went into effect. The plaintiff added the amount of the tax to the market value of the article on the day of the incidence of the tax. The tax was alleged to have been absorbed to the extent that this sum exceeded the price eventually realized on the article. The court accepted the formula proposed by the plaintiff and allowed it to recover.

██ In the instant case, there also had been a loss. Plaintiff alleges that Delta's loss was due to the tax. It was too big for that alone. Delta's obvious inefficiency of operation is an equally plausible explanation. There is in fact no reason to assign any order in the occurrence of either cost. It would seem to be fairer to apportion the loss among all cost factors in the degree of their monetary importance. There are, however, two additional factors in this problem: Delta's prices remained unchanged and there was no evidence indicating an intention to shift the burden of the tax. For these reasons the court finds that the plaintiff has sustained the burden of proof as to units sold in the fiscal year 1948, and that as to these units plaintiff has absorbed the tax. As to the units sold during the fiscal year 1947 we find the proof insufficient. Plaintiff, therefore, is entitled to recover the tax it paid on units sold by Delta in the fiscal year 1948, that is, $767.23, with interest as provided by law.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.