**TENNECO, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 735–81T.**

United States Claims Court.

July 7, 1989.

---

John F. Emanuel, Milwaukee, Wis., for plaintiff.

William K. Drew, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## OPINION

RADER, Judge.

In this tax refund suit, plaintiff, Tenneco, Inc., seeks recovery of $2,022,340.00 paid in federal manufacturer's excise taxes. From 1972 through the third quarter of 1975, Tenneco's subsidiary, Walker Manufacturing, mistakenly paid excise taxes on motor vehicle parts and accessories that were in fact exempt from taxation. Tenneco incorrectly classified dual use and recreational vehicle parts as taxable truck parts, rather than exempt automobile parts.

Although defendant concedes that plaintiff mistakenly paid the tax, a refund is not automatic. The Internal Revenue Code (IRC) requires plaintiff to show, as a prerequisite to any refund, that it did not shift the tax to its consumers. This litigation focuses on that central issue.

On December 28, 1981, plaintiff filed a refund claim in the United States Claims Court. On October 18, 1988, this court received the case. On April 26 and 27, 1989, this court held a trial. After review of the trial record, this court determines that plaintiff did not show, under the applicable legal standards, that it bore the burden of the tax. Therefore, the IRC prevents recovery.

## FACTS

Plaintiff manufactures motor vehicle parts and accessories. These parts were generally subject to the manufacturer's excise tax. 26 U.S.C. § 4061, (1982) (repealed 1984). From January 1, 1972 through September 30, 1975, plaintiff paid excise taxes on exhaust system parts—mufflers, tailpipes, connectors, and the like—manufactured to fit dual use and recreational vehicles. Plaintiff mistakenly considered the exhaust systems as truck parts and paid the tax. The parts, however, due to their nature and use, were not subject to federal excise tax. As replacement parts for autos, rather than trucks, the exhaust systems were exempt from excise taxes.

From 1972–1975, plaintiff ranked first in the nation in replacement market sales of exhaust systems. Plaintiff won this mar-

ket position by selling replacement parts to a wide variety of large auto parts distributors. Plaintiff's largest customer was the National Automotive Parts Association (NAPA), a national parts buying and distribution network for independent jobbers. NAPA purchased between 30% and 40% of plaintiff's manufacturing output. Plaintiff also sold to other associations and independent distributors.

Mr. James Ince, for thirty years a Tenneco executive, testified persuasively about plaintiff's method of setting prices. Plaintiff set its prices based on the prices of its competitors. See, e.g., Transcript of Proceedings, No. 735–81T, April 26, 1989, (Tr.) at 92, 117–18, 154–55. This method is competitive pricing.

An alternative method, rejected by plaintiff for setting prices, is cost-based pricing. See, e.g., Tr. at 93–94. Under cost-based pricing, a manufacturer computes each element of the cost of producing the product. To these separate elements—labor, raw materials, depreciation, taxes, and so forth—the manufacturer adds an appropriate profit margin. The total of the costs and the profit margin is the price.

Mr. Ince explained that cost-based pricing did not work for the exhaust system replacement part market. See, e.g., Tr. at 94–95, 99. Tenneco sold some exhaust systems and parts at a significant loss. The price did not recover the cost of producing the part. Tenneco balanced these losses with disproportionately high profits on other parts and systems. With these disparities from part to part, plaintiff could not rely profitably on cost-based pricing. Consumer preferences, traditional automobile engineering practices, and competitive forces maintained these disparities and made cost-based pricing impractical for this replacement part market. See, e.g., Tr. at 95–100.

Beginning in the 1930s and continuing uninterrupted to the present, plaintiff employed competitive pricing. See, e.g., Tr. at 100–01, 174. Under this pricing method, plaintiff acquired the price lists for replacement parts produced by the large automobile manufacturers (Ford, General Motors, etc.), or the original equipment manufacturers (OEMs). See, e.g., Tr. at 92, 211. Plaintiff then based its price directly on the OEM price for a comparable part.

Plaintiff did not necessarily copy the OEM price verbatim. On some occasions, Tenneco would manufacture a part that replaced several different OEM parts. In those instances, plaintiff would base its price on one of the comparable OEM parts. See, e.g., Tr. at 155–57. On other occasions, Tenneco, on the basis of a better distribution system, would set its price at 105% of the OEM price. See, e.g., Tr. at 171–73. On all occasions, however, plaintiff based its prices directly on its competitor's prices. Mr. Charles Lueke, a current Tenneco executive, corroborated Mr. Ince's testimony about plaintiff's price-setting methods by actually replicating the pricing of a few products.

Neither Mr. Ince nor Mr. Lueke, despite extensive experience in the replacement parts market, was able to testify about OEM price setting methods. See, e.g., Tr. at 158, 177–78, 232. Mr. Ince testified that the OEMs felt a "proprietary pride" in their parts and priced them independently. See, e.g., Tr. at 103–04.

The parties submitted as Joint Exhibit 1 a side-by-side listing of OEM prices and Tenneco prices for the years in question. This listing shows that Tenneco's prices were generally 100% or 105% of the OEM price. The listing also shows that General Motors (the only OEM whose prices were available for comparison)[1] paid excise tax on many of the parts. The designation "T" appears in the left margin beside the taxed parts. General Motors also considered those parts marked "T* " taxable during at least part of the time that the price list was

---

**1.** The parties stipulated: "Despite efforts to do so, the parties have been unable to obtain comparable information as to the federal excise tax classification of the parts identified on Joint Exhibit 1 and manufactured by original equipment manufacturers other than General Motors. Such information for such other manufacturers is no longer available." Tr. at Joint Exhibit 3, ¶ 14.

in effect.[2] The parties presented very little significant evidence about OEM pricing methods.

After setting its price, plaintiff issued price lists to its customers. Most of these lists simply specified the price for each part. Nearly all the price lists for NAPA, Tenneco's largest customer, included the designation "Federal Excise Tax included." Mr. Ince explained that plaintiff included this designation at the request of NAPA. See, e.g., Tr. at 127–28. Mr. Ince did not know specifically why NAPA made that request. Id. at 132.

A few of the NAPA price lists included as trial exhibits did not include the "Federal Excise Tax included" language. See Tr., Ex. 23(f), 23(l), and 23(m). One price list without the tax inclusion language, Exhibit 23(f), was an interim revision of an earlier price list. See Tr. at 175. The other price lists lacking the tax inclusion designation were effective July 12, 1976 and November 8, 1976. Plaintiff discovered that it had erroneously paid excise taxes in late 1975 or early 1976. See Tr. at 120. The July 12 and November 8, 1976 price lists issued after plaintiff's discovery of its error. See Tr. at 175–77. On those price lists, plaintiff dropped the "Federal Excise Tax included" language.

Mr. Ince also testified that plaintiff sold to its foreign customers at exactly the same price used for domestic sales. See, e.g., Tr. at 107–09, 133–34, 173–74. Whether selling in Canada, Brazil, Venezuela, Argentina, or other foreign markets, Tenneco did not change its prices. Plaintiff's prices (derived from OEM price lists) applied equally at home and abroad.

During the 1972–1975 period, plaintiff rebated excise taxes to customers in non-taxable transactions. Mr. Ince prepared Tenneco's internal procedure for verifying that an exempt sale warranted a rebate. See Tr. at 135–38, 146–47. For instance, exhaust system sales to the Government were exempt from federal excise taxes. Therefore, plaintiff rebated the portion of the purchase price attributable to excise taxes to a Government customer upon request. Joint Exhibit 2 substantiates that plaintiff granted rebates in all but five of the forty-five months covered by this suit. Defendant's exhibits P through BB are copies of credit memoranda used to effect these rebates.

Plaintiff occasionally entered sales contracts which explicitly covered federal excise taxes. See, e.g., Tr., Ex. I, J. For instance, in its contract with Western Auto Supply Company, plaintiff agreed that an "eight percent [Federal Excise Tax would be] included where applicable" in the sales price. Id. Plaintiff also sold aftermarket parts on occasion to OEM service garages. On invoices accompanying these transactions, plaintiff also listed federal excise taxes as a separate item. See, e.g., Tr. at 242, 269.[3] The OEM customers demanded that plaintiff bill federal excise tax separately and plaintiff complied. Id.

Mr. William McIlvaine testified about a report prepared by an Internal Revenue Service (IRS) revenue agent. The agent permitted a refund of excise taxes paid on some exhaust systems which plaintiff had purchased from other sources and resold as its own. Although these purchased parts are not at issue in this case, plaintiff argues that it set prices for manufactured parts in the same way as purchased parts. Therefore, plaintiff contends that the revenue agent's finding with respect to purchased parts ought to apply to manufactured parts as well.

Based on these facts, this court must determine whether plaintiff included federal excise taxes in the price of manufactured replacement parts for which it claims a refund. In other words, this court must decide whether plaintiff bore the burden of the excise taxes or shifted that burden to its customers.

---

2. The parties explained the other designations on Joint Exhibit 1 in their stipulations. Tr., Joint Exhibit 3, ¶ 13.

3. None of the aftermarket parts sold to OEM service garages are parts for which plaintiff now claims a refund. See, e.g., Tr. at 270.

## DISCUSSION

The IRC sets forth the law that applies to this case:

(a) Condition to allowance.

(1) General Rule.

No credit or refund of any overpayment of tax ... shall be allowed or made unless the person who paid the tax establishes, under regulations prescribed by the Secretary, that he—

(A) has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from the person who purchased such article.

26 U.S.C. § 6416(a)(1)(A) (1982).[4] Thus, the IRC requires plaintiff to demonstrate that it did not pass on the tax to its customers.

■ This provision of the IRC prevents unjust enrichment of manufacturers who have shifted the burden of the tax to their customers. *See T.S. & M. Co. v. United States,* 75–1 U.S. Tax Cas. (CCH) ¶ 16,175, at 87,498 (E.D.N.Y.1974). The Court of Claims acknowledged this purpose:

Congress intended that only those persons who actually had to bear the tax should benefit by any refund the Treasury might make.

*Worthington Pump & Mach. Corp. v. United States,* 129 Ct.Cl. 87, 92, 122 F.Supp. 843, 846 (1954).

Unlike many IRC provisions, § 6416 does not protect the public fisc, but the fairness of the refund process. This section ensures that when parties other than the taxpayer actually incur the cost of the tax that they receive the benefit of the refund. *United States v. Jefferson Elec. Mfg.,* 291 U.S. 386, 402, 54 S.Ct. 443, 449, 78 L.Ed. 859 (1934). Those parties cannot directly seek a refund because they did not pay the tax. They must rely on the manufacturer to reimburse them before the manufacturer seeks a tax refund. *Worthington,* 122

F.Supp. at 846. Thus, this provision of the IRC intends that fair result.

### Burden of Proof

■ Although some courts suggest that plaintiff must show it absorbed the tax by "clear and decisive evidence," *Andrew Jergens Co. v. Conner,* 125 F.2d 686, 689 (6th Cir.1942); *Riviera Mfg. Co. v. United States,* 307 F.Supp. 916, 917 (D.Colo.1969) *aff'd,* 440 F.2d 780 (10th Cir.1971); *Rogue River Trailer Mfg. Co. v. United States,* 267 F.Supp. 272, 273 (D.Ore.1966), other courts use the customary "preponderance of the evidence" standard. *Anderson Co. v. United States,* 69–2 U.S. Tax Cas. (CCH), ¶ 15,902, at 86,209 (N.D.Ind.1969), *aff'd,* 447 F.2d 41 (7th Cir.1971); *McCoy Mfg. & Sales Co. v. United States,* 68–2 U.S. Tax Cas. (CCH), 15,871, at 88,510 (S.D. Iowa 1968). Still other courts, in accordance with the language of the statute, simply note that the taxpayer has the burden of proving it bore the tax. *B & M Co. v. United States,* 452 F.2d 986, 990 (5th Cir. 1971); *Norris Dispensers, Inc. v. United States,* 325 F.2d 140, 142 (8th Cir.1963).

The text of the statute does not specify a higher burden of proof than normally required of a taxpayer. *Helvering v. Taylor,* 293 U.S. 507, 513–14, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935). The statute states simply that the "person who paid the tax [must establish] ... under regulations prescribed by the Secretary, that he" absorbed the tax. IRC § 6416(a)(1)(A). The applicable regulations require the taxpayer to file a written statement "supported by sufficient available evidence" that the customer did not bear the tax in higher prices. Treas. Reg. § 48.6416(a)–3(a)(2)(i) (1988). Neither the statute nor the "regulations prescribed by the Secretary" impose a burden beyond the traditional "preponderance of the evidence" standard.[5]

---

**4.** Section 6416 sets forth several exceptions to the requirements of § 6416(a)(1)(A). Plaintiff does not invoke any of these exceptions, but confines its claim to the applicability of § 6416(a)(1)(A) to its refund claim.

**5.** The IRS has asserted that "under certain circumstances" a taxpayer must present "clear and

convincing evidence" to prove a § 6416 refund claim. Rev.Rul. 60–213, 1960–1 C.B. 633. Thus, in the Revenue Ruling, the IRS argues that the higher standard applies whenever a manufacturer's price list or invoice indicates inclusion of the tax in customer's prices. This standard, however, finds no support in the statute nor in the Secretary's regulations.

Of most importance, the predecessor to the Claims Court did not impose a higher standard of proof on taxpayers. *See, e.g., F & D Trading Corp. v. United States,* 217 Ct.Cl. 472, 483–84, 580 F.2d 414, 421–22 (1978). The Court of Claims stated:

> The statute provides then that the plaintiff must either show that he himself has borne the burden of the tax or that he has repaid ... the "ultimate purchaser."

*Worthington,* 122 F.Supp. at 846. This court, therefore, as dictated by the language of the statute and binding precedents, must apply the traditional standard of proof in this action. Plaintiff must show, by at least a preponderance of the evidence, that it absorbed the tax. *Worthington,* 122 F.Supp. at 846; *GorDag Indus., Inc. v. United States,* 63–2 U.S. Tax Cas. (CCH), ¶ 15,532 at 90,565 (D.Minn. 1963).

### Method of Setting Prices

■ A taxpayer's method of setting prices directly affects the nature of proof necessary to establish that those prices lacked an excise tax component. A manufacturer may base its prices either on market prices—competitive pricing—or on its production costs plus a profit margin—cost-based pricing. In general terms, when a manufacturer uses cost-based pricing, the court must ascertain if excise taxes are one of the cost components of the final price. *See, e.g., Clauson Mfg. Co. v. United States,* 74–2 U.S. Tax Cas. (CCH) ¶ 16,153 at 85,901 (W.D.Ky.1974). When a manufacturer uses competitive pricing, the court must ascertain if the market prices include an excise tax component. *See, e.g., Riviera,* 307 F.Supp. at 917–18; *GorDag,* 63–2 U.S. Tax Cas. (CCH) at 90,566. In simple terms, if the taxpayer bases prices on costs, did those costs include excise taxes? If the taxpayer bases prices on the market, did the market include excise taxes within its prices? Again, plaintiff has the burden of providing evidence to answer the question which applies to its pricing method.

If a taxpayer bases its prices on the market, the taxpayer must show that the market price lacked an excise tax component. In *GorDag,* a district court stated:

> The fact that plaintiff's prices were market determined does not prove that the tax was not passed on; a market determined price could contain an excise tax component.

63–2 U.S. Tax Cas. (CCH) at 90,566. Similarly, another district court noted:

> Plaintiff's major contention is that its prices were set solely by competition, with no provision for inclusion of the excise tax.... The contention is that if a manufacturer's prices are forced by competition it is not passing the burden of the tax on to the customers. We disagree. The fact that prices are set by the market does not necessarily mean that there is no tax component included in the price.

*Riviera,* 307 F.Supp. at 917–18. Thus, a taxpayer who sets prices competitively must present evidence to answer the central question: Does the market price contain an excise tax component? This inquiry influences the ultimate question of whether the taxpayer's prices included excise taxes.

In addition to direct evidence about the components of market prices, courts have weighed a variety of factors to help answer this question. These factors examine the taxpayer's actions for evidence of whether its prices contained an excise tax component. Some of those factors are: (1) the correlation between price changes and application of the tax, (2) the refunding of tax to exempt purchasers, (3) the reference to taxes in invoices or sales literature, (4) the existence of negotiated contracts including excise taxes, (5) the correlation between prices for taxable domestic sales and exempt foreign sales, (6) the methods of accounting for the tax, and finally, (7) taxpayer profitability. Some of these factors have different weight and applicability depending on whether the taxpayer used cost-based or competitive pricing.

■ Plaintiff established that it used competitive pricing. Tenneco based its prices on the market. Specifically, plaintiff acquired OEM price lists and adjusted its prices to conform with those OEM prices.

Plaintiff proved that the OEMs were the price leaders in this market. Although plaintiff often set its prices above OEM prices, this action did not amount to price leadership. Tenneco still based its prices on the OEM rates. Plaintiff merely placed a 5% premium on the OEM price to take advantage of its superior service and distribution network.

Plaintiff did not use cost-based pricing. In fact, plaintiff rejected proposals to convert to cost-based pricing. The nature of this unique market, however, made cost-based pricing impractical. Plaintiff used market pricing. Therefore, plaintiff has the burden of showing that the market, specifically the OEM prices in this case, did not contain an excise tax component.

Plaintiff provided little or no direct evidence to meet its burden. Plaintiff failed to show that the market did not contain an excise tax component. Neither Mr. Ince nor Mr. Lueke could provide any testimony about OEM pricing methods.

Only a few tidbits of evidence shed light on OEM pricing practices. This light does not favor plaintiff. First, Joint Exhibit 1 indicates that the OEMs considered many of the parts at issue in this case taxable. Moreover the parties stipulated:

> Excise tax was paid by General Motors on the sale of each of the parts so denoted [on Joint Exhibit 1] with a "T". General Motors has not claimed any excise tax refund relating to the sale of these parts other than for those involving sales to legally exempt purchasers.

Tr. at Joint Exhibit 1, ¶ 13; see also Tr. at 430–31. General Motors, the only OEM price leader about whom evidence is available, paid excise taxes on many of these exhaust system parts. General Motors did not seek a refund.

The second tidbit of evidence about OEM pricing practices involved plaintiff's sales to OEM service departments. When plain-tiff sold parts to OEMs, the OEMs insisted upon separate billing for excise taxes. Only when dealing with OEMs did plaintiff list federal excise taxes separately on invoices. See Tr. at 269–70. Because plaintiff based its prices solely on OEM prices, this OEM demand might have reasonably caused plaintiff to infer that the OEM price contained an excise tax component. Therefore, the OEMs wanted excise taxes billed separately on parts sold to themselves at prices based on their own.

A final tidbit was Mr. Ince's testimony that the OEMs set their prices independently. Mr. Ince discussed how each OEM felt a pride in their own product and insisted on setting their own price. This testimony implies a cost-based pricing method, rather than a method which relies on competitor's prices.

In any event, this court need not draw any inferences from these tidbits of evidence about OEM pricing practices. Plaintiff has the burden of showing that its prices lack an excise tax component. When plaintiff bases its prices on its competitor's prices or the market, plaintiff must show that its competitor's prices or the market lack an excise tax component. Plaintiff did not present evidence to show this.

Plaintiff contends that determining whether General Motors included excise taxes within its prices imposes a near-impossible burden upon a litigant. See Tr. at 430. Plaintiff also agrees that this inquiry is appropriate, though not determinative. See Tr. at 431. While the burden of proving the components of a competitor's price may on some occasions prove difficult,[6] the taxpayer in other instances may satisfy the burden by calling for testimony from one of the competitor's pricing experts. In this case, the parties narrowed the number of competitors with available evidence to one. The parties presented some evidence about this competitor and its pricing in Joint Exhibit 1. Thus, plaintiff could conceivably

---

**6.** If, for instance, a competitor, on whose prices a taxpayer based its own prices, set prices in reliance upon the market, the taxpayer could get locked into an endless cycle of proving which competitors relied upon whom or what market forces influenced pricing. Thus, hypothetically, the taxpayer would have to resort to proving some of the seven factors cited by this court with respect to many competitors. In this case, however, the parties had narrowed the number of OEMs with evidence to one.

have met its burden without extraordinary expense or effort.

Plaintiff also contends, correctly, that this court must weigh other relevant factors, not merely its failure of proof with respect to OEM pricing methods. *See, e.g., Riviera,* 307 F.Supp. 918; *Anderson,* 69–2 U.S. Tax Cas. (CCH) at 86,209. Thus, this court reviews the factors by examining Tenneco's actions for evidence that it absorbed or shifted the tax.

### Other Factors

Courts have applied a variety of factors to examine a taxpayer's activities for evidence of whether its prices include excise taxes. This court has identified seven such factors. A review of these factors shows that plaintiff acted as if its prices included a federal excise tax component.

Many courts have examined a correlation between a taxpayer's price changes and application of the excise tax. Thus, if a taxpayer raised prices upon learning of the application of the tax, *see, e.g., Rogue River Trailer,* 267 F.Supp. at 274,[7] *Norris Dispensers, Inc.,* 325 F.2d at 141, or reduced prices upon learning the tax would not apply, courts have cited this factor in determining that the price included an excise tax component. Courts have also cited a taxpayer's refusal to correct prices to account for changes in tax status as evidence that the price did not contain excise taxes. *See, e.g., B & M Co.,* 452 F.2d at 987; *Worthington,* 122 F.Supp. at 847–48.

In this case, plaintiff did not reduce prices upon learning of the tax exemption for many exhaust system replacement parts. Although a factor worthy of consideration, this factor has less significance under plaintiff's competitive pricing method than under a cost-based pricing system. In some cases where courts have placed great emphasis on this factor, the taxpayer to some degree used cost-based pricing. In *B & M,* for instance, the taxpayers analyzed their costs when setting prices.[8] Excise taxes are a major cost component for manufacturers. Yet, upon application or withdrawal of the tax, these taxpayers did not change their cost-based prices. Accordingly, the courts appropriately inferred, based on this and other factors, that those prices did not contain an excise tax cost component.

Plaintiff relies on competitive-based pricing. Mr. Ince repeatedly testified that Tenneco would not profit by cutting its prices below OEM prices. *See, e.g.,* Tr. at 99–100. Plaintiff's policy dictated pricing according to the market, regardless of changes in cost factors, such as excise tax status. Thus, plaintiff's reluctance to change prices upon learning of a change in excise tax status was consistent with plaintiff's policy. Therefore, this factor carries less weight than if plaintiff used cost-based pricing.[9] Moreover, other factors show that plaintiff acted as if its prices included excise taxes.

For instance, plaintiff refunded excise taxes to exempt customers. Courts have considered a taxpayer's willingness to rebate that portion of its sales price attributable to excise taxes as a factor possibly indicating that the price included a tax component. *See, e.g., Vogel v. Knox,* 147 F.Supp. 10, 13 (D.Minn.1957). Other courts have noted that, because taxpayers can deduct the rebate from the excise taxes, their willingness to grant credits amounts to Government-funded customer good will.

---

**7.** A district court stated: "On the day the tax went into effect … [prices] were raised on many models by 10 per cent…." *Rogue River Trailer Mfg. v. United States,* 267 F.Supp. 272, 274 (D.Ore.1966).

**8.** The Fifth Circuit stated: "These prices are usually those used the previous year, adjusted for increase or decrease in supplier's prices." *B & M Co. v. United States,* 452 F.2d 986, 988 (5th Cir.1971). Thus the taxpayer apparently relied on supplier prices, or costs, when setting prices. The taxpayer in *B & M* also relied, according to the record, on competitor's prices, but the costs of the products from suppliers played a central role in the pricing process.

**9.** Cost-based factors continue to carry some weight even for taxpayers who set price based on competition. Courts have reasoned that a manufacturer is not likely to continue to produce a product unless the price, whether set by the market or otherwise, covers production costs. *Clauson Mfg. Co. v. United States,* 74–2 U.S.T.C. ¶ 16,153, 85,901 (W.D.Ky.1974).

*Anderson,* 69–2 U.S. Tax Cas. (CCH) at 86,210. In conjunction with other factors, however, plaintiff's practice of granting rebates tends to show that it believed its prices included excise taxes.

Another factor present in this case consistent with inclusion of excise taxes in plaintiff's prices was Tenneco's reference to excise taxes in sales literature and invoices. Courts have cited this factor to support a finding that the tax was passed on to customers. *T. S. & M.,* 75–1 U.S. Tax Cas. (CCH) at 87,499. Plaintiff's price lists for its largest customer, NAPA, contained the language "Federal Excise Tax included." Plaintiff also billed federal excise taxes separately on some invoices, specifically invoices on products sold to OEM service garages.

Plaintiff argued that this language is evidence that Tenneco absorbed the tax. According to plaintiff, this language meant that Tenneco's price was final and would not be adjusted upward to account for the tax, shipping, warehousing, or any other cost factor. *See, e.g.,* Tr. at 330–31. This explanation is not compelling for several reasons: First, this language appeared on price lists. Thus, the natural reading of the language suggests that the listed prices already included excise taxes. Second, plaintiff did not attach this language to most of its price lists. Yet plaintiff contends that the absence of the language had no significance on those other lists. Third, plaintiff refers to taxes as a cost factor while it used a competitive pricing system. Fourth, and perhaps most telling, when plaintiff learned of the tax exemption for these exhaust system parts later in 1975 or early 1976, it dropped the language from subsequent 1976 price lists. In other words, plaintiff changed its price literature in response to the change in tax status. By mentioning excise taxes on its price lists and some invoices, plaintiff's actions suggest that its price contained an excise tax element (carried over in the OEM price).

Plaintiff also entered into sales contracts which dictated the federal excise tax consequences of the bargain. Plaintiff contracted with Western Auto Supply for the sale of exhaust system replacement parts. Those contracts state that the price included excise tax where applicable. Because contained in a contractual agreement, rather than merely price lists or sales literature, the statement including excise taxes in the price has significant weight. *Commissioner v. Danielson,* 378 F.2d 771, 775 (3d Cir.1967); *see also, Proulx v. United States,* 219 Ct.Cl. 363, 371–72, 594 F.2d 832, 836 (1979). Particularly in light of the purpose of § 6416 of the Tax Code, when a customer enters a contract specifying that the price includes excise taxes, that customer has a right to expect that it will receive a tax refund in the event of overpayment. Thus, this factor is evidence that plaintiff acted consistent with passing on the tax to its customers.

In *F & D Trading,* the Court of Claims particularly noted: "No separate excise tax amount ever appeared on an F & D or Great Empire invoice (although the printed invoices contained the general statement, 'excise tax included.')" 580 F.2d at 421. In this case, plaintiff did bill excise taxes separately on some invoices, namely those related to sales to OEM service garages. This separate invoicing for federal excise tax on transactions involving similar exhaust systems sold to OEMs during 1972–1975 sheds light on plaintiff's understanding that the OEM price for these parts likely contained a federal excise tax component. Furthermore, plaintiff included specific reference to inclusion of excise taxes in the negotiated contract with Western Auto. Thus, plaintiff acted as if it shifted the tax burden to its customers.

Plaintiff kept the same price for exempt foreign and taxable domestic transactions. In *GorDag,* the district court based its decision against the taxpayer, in part, on the finding that the taxpayer's domestic sales price exceeded the export price by the amount of the excise tax. 63–2 U.S. Tax Cas. (CCH) at 90,566. In this case, however, if plaintiff's prices (derived from OEM prices) already contained a tax component, then plaintiff simply passed on the tax to foreign as well as domestic consumers. Moreover plaintiff presented no evidence of the volume of foreign sales. Con-

ceivably the volume of foreign sales was not enough to justify producing separate price lists for separate countries.

Plaintiff also presented evidence that it computed excise tax liability after the sales were complete. Thus, according to plaintiff, it treated excise taxes as a cost item deducted from its gross profits. In other words, plaintiff contends that it treated the tax as a liability which it bore. Some courts have given weight to the taxpayer's method of accounting, *see, e.g., T.S. & M.,* 75–1 U.S. Tax Cas. (CCH) at 87,498; *F & D Trading,* 580 F.2d at 421–22; others have given it little weight. *Anderson,* 69–2 U.S. Tax Cas. (CCH) at 86,210.

Because the Claims Court's predecessor gave weight to this argument, *F & D Trading,* 580 F.2d at 421–22, this court appropriately considers this among other factors. The Court of Claims stated:

> Neither F & D nor Great Empire ever collected any dollars that were identified in any way as manufacturer's excise tax, nor did they keep any account of manufacturer's excise tax liability on their books.

580 F.2d at 421. The taxpayer in *F & D Trading* was a small business which negotiated each sale one at a time. After the sale, the company would multiply its gross sales by the tax rate to compute its liability. Thus, the tax became a cost element in each transaction. The Court of Claims concluded that the taxpayer in *F & D Trading* absorbed the tax liability as a cost of doing business.

In this case, plaintiff also paid its excise tax liability out of its gross sales revenues. Plaintiff was a major enterprise setting its prices competitively. If its prices already contained an excise tax component (as part of the OEM price), then naturally plaintiff would pay the tax it collected from its customers out of its gross sales revenues. In this case, plaintiff's method of accounting does not provide conclusive evidence of tax absorption. Plaintiff's market-based pricing methods were simply different from its cost-based accounting methods.

Finally, this court considers taxpayer profitability. This factor is probably least important in showing tax absorption or tax shifting. In the words of the Claims Court's predecessor, "the fact that a firm is making a profit or loss does not in itself determine whether or not it has passed on the tax." *Worthington,* 122 F.Supp. at 847. In this case, plaintiff was the top ranked profit-maker in the exhaust system replacement part market.

To the extent that cost-based factors are relevant for a taxpayer using a market-based pricing system, this factor perhaps has some relevance. Courts have reasoned that a taxpayer is not likely to continue to produce at a loss whether it sets prices competitively or not. *Clauson,* 74–2 U.S. Tax Cas. (CCH) at 85,901. Hence, cost-based factors remain relevant to some degree for taxpayers using market-based pricing. In this case, plaintiff did not suffer losses due to excise tax or other cost factors.

In sum, an examination of plaintiff's actions shows that it often acted as if its prices contained an excise tax element. Among other actions consistent with shifting the tax to its customers, plaintiff granted excise tax rebates to exempt customers, referred to excise taxes on some price lists and invoices, and entered contracts with excise tax consequences. Some of the actions that plaintiff contends evince absorption of the tax, are in fact largely a product of plaintiff's market-based pricing system. Plaintiff's failure to reduce prices coincident with learning of tax exemption, for instance, is largely explained by Tenneco's unwavering reliance on competitive pricing. Thus, weighing all of the factors produces the conclusion that plaintiff acted consistent with shifting the excise tax to its customers as an element of its prices.

*Revenue Agent Report*

Plaintiff also relied upon a revenue agent's report permitting a refund on some parts which plaintiff alleges were priced according to methods identical to the parts now at issue. The revenue agent report covered only parts which plaintiff purchased, rather than manufactured. At most, this report shows that the IRS

reached inconsistent conclusions on refunds covering different parts.[10] This court, however, must determine on the basis of the trial record whether plaintiff passed on the tax. Plaintiff's failure to present evidence of OEM pricing methods and failure to satisfy the seven other factors, answers that question, regardless of allegedly inconsistent administrative decisions by IRS personnel. Moreover, neither the plaintiff in this trial nor the IRS report itself provided enough detail of what the agent reviewed in reaching the allegedly inconsistent result. Therefore, this court could not determine whether the IRS in fact made inconsistent administrative determinations.

## CONCLUSION

Plaintiff had the burden of proving that its prices did not include excise taxes. Because it set prices based on its competitor's prices, plaintiff therefore had the burden of proving that its competitor's prices lacked an excise tax component. Plaintiff did not meet this burden.

Plaintiff also had the burden of showing that it consistently acted as if it had absorbed the tax. An examination of plaintiff's actions in light of several factors, however, indicates that plaintiff instead often acted as if it passed on the tax to its customers.

Therefore, plaintiff failed to establish, according to § 6416, that it has not included excise taxes in the price of its goods. The IRC requires this court to grant judgment for the defendant. Accordingly, the Clerk of the court is directed to enter judgment for the defendant. No costs.

---

10. This suit is a *de novo* proceeding, not a judicial review of IRS' administrative actions. *See, e.g., Cleveland Trust v. United States,* 421 F.2d 475, 482 (6th Cir.1970), *cert. denied,* 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970).