# United States Court of Appeals for the Federal Circuit

---

**8X8, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1959

---

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00478-EDK, Judge Elaine Kaplan.

---

Decided: April 27, 2017

---

H. CHRISTOPHER BARTOLOMUCCI, Kirkland & Ellis LLP, Washington, DC, argued for plaintiff-appellant. Also represented by CHRISTOPHER GEORGE MICHEL.

JUDITH ANN HAGLEY, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TERESA E. MCLAUGHLIN, CAROLINE D. CIRAOLO.

---

Before WALLACH, CHEN, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant 8x8, Inc. ("8x8") sued Appellee the United States ("Government") in the U.S. Court of Federal Claims, seeking a refund of more than $1 million in Federal Communications Excise Tax ("FCET" or "excise tax"). The parties subsequently filed cross-motions for summary judgment, and the Court of Federal Claims denied 8x8's Motion and granted the Government's Cross-Motion, thereby denying 8x8's claim for a refund of the FCET remitted. *See 8x8, Inc. v. United States*, 125 Fed. Cl. 322, 331 (2016).

8x8 appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012). We affirm.

BACKGROUND

I. 8x8's VoIP Services

8x8 is a provider of local and long-distance telephone services over a broadband internet connection via Voice over Internet Protocol ("VoIP"). This service allows customers to make and receive calls over the internet via a digital terminal adapter ("DTA"), which contains 8x8's proprietary firmware and software. J.A. 246. Part of 8x8's VoIP service included the use of other transmission services from Level(3) and Global Crossing—i.e., traditional telecommunications carriers. J.A. 246. The customer's call would be switched over to Level(3)'s or Global Crossing's traditional lines and circuits when necessary.[1] J.A. 365–66. However, 8x8 did not pay any FCET to Level(3) or Global Crossing because it provided them with an "exemption certificate[]," which "represent[ed] that

---

[1]    8x8 purchased service from Level(3) or Global Crossing in order to hand over the VoIP signal, "which would then convert the digital signal back to a voice signal (if necessary) and deliver the signal to the recipient of the call." Appellant's Br. 17.

[8x8] was a provider of telephone service and was exempt from the excise tax in [I.R.C.] § 4253 [(2006)]."[2]  J.A. 246.

Subscribing to a plan offered by 8x8 included several steps.  First, customers seeking access to 8x8's VoIP service needed to purchase a DTA.  J.A. 246.  After making the necessary physical connections to the DTA, the customer then "went to 8x8's website and signed up for a subscription plan," which included "accept[ing] 8x8's Terms and Conditions of Service."  J.A. 247.  These Terms and Conditions provided that 8x8 would collect the FCET from its customers and remit the FCET to the Internal Revenue Service ("IRS") for the customers' use of 8x8's VoIP domestic telephone service.  *See* J.A. 259 ("8x8 will . . . bill all charges invoiced to End User's account . . . .  Such charges shall include . . . monthly service fees, . . . toll charges, taxes and any other applicable charges."), 260 ("Prices for the Services do not include any . . . sales, use, value added, excise, federal, state, local, public utility or other similar taxes.  All such taxes shall be paid by the End User and will be added to any amounts otherwise charged[,] unless [the] End User provides 8x8 with an appropriate exemption certificate.").  The subscription plans included (1) an unlimited local and long distance plan permitting calls that were within "reasonable personal use" for a set fee, J.A. 247; or (2) plans for a set amount of minutes at a set price, J.A. 246.  After selecting a subscription plan, "the customer would provide 8x8 with a credit card which would

---

[2]    Relevant here, § 4253 provides "[c]ommon carriers and communications companies" an exemption from the FCET "for any toll telephone service . . . to the extent that the amount so paid is for use by a common carrier, telephone or telegraph company, or radio broadcasting station or network in the conduct of its business as such."  I.R.C. § 4253(f).

be used to pay all charges, fees, and taxes for the 8x8 service."[3]   J.A. 247.   Finally, "the customer would be provided with a 10 digit code that would be used to activate the 8x8 service."  J.A. 247.

## II. Relevant History of the FCET

8x8's VoIP services were subject to the FCET. J.A. 246; *see* I.R.C. § 4251(a)(1) (imposing the FCET on "communications services"); *id.* § 4251(b)(1) (defining "communications services").  Beginning in 2005, several appellate courts held that § 4251 did not permit the IRS to tax telephone services that billed customers based on a fixed per-minute, non-distance-sensitive rate.  *See, e.g.*, *Reese Bros., Inc. v. United States*, 447 F.3d 229, 234 & n.2 (3d Cir. 2006) (collecting cases).

In response to these rulings, the IRS ceased collecting the FCET on "amounts paid for time-only service."  I.R.S. Notice 2006-50, § 1(a), 2006-25 I.R.B. 1141 ("2006 Notice")[4]; *see* I.R.S. Notice 2007-11, 2007-5 I.R.B. 405 (clarifying and modifying the 2006 Notice).  The IRS also stated that VoIP services were non-taxable, 2006 Notice, § 3(a), (d), and established a process for taxpayers to seek a refund of the FCET that had been exacted on non-taxable services during the period between February 2003 and August 2006, *id.* § 5(d).   Finally, the 2006 Notice

---

[3]   "In order for a customer's VoIP bundled domestic service to be active, the customer's account had to be prepaid in advance."  J.A. 247.  However, any other applicable charges were billed to the subscriber's account at the end of the month, along with the next month's fee. *See* J.A. 259.

[4]   The 2006 Notice was "prospectively vacated" on April 9, 2012.  *8x8*, 125 Fed. Cl. at 324 n.1.  "Because this vacatur was not retroactive, it does not affect the outcome of this case."  *Id.*

stated that a "collector"[5] can request a refund of the FCET collected from customers during the relevant period if the collector either (1) "establishes that it repaid the amount of the tax to the person from whom the tax was collected"; or (2) "obtains the written consent of such person to the allowance of such credit or refund." *Id.* § 5(d)(4)(i); *see* I.R.C. § 6415(a) (similar).

8x8 subsequently filed a refund claim with the IRS for the FCET imposed between March 2003 to July 2006. J.A. 245–46. After its refund claim was denied in part, 8x8 exhausted its administrative remedies with the IRS. J.A. 232–42. 8x8 then sued the Government in the Court of Federal Claims, seeking a refund of more than $1 million for the FCET remitted to the IRS. J.A. 19–29. The Court of Federal Claims concluded that 8x8 lacked standing and granted the Government's motion for summary judgment. *8x8*, 125 Fed. Cl. at 330–31.

## DISCUSSION

The parties have stipulated to the material facts of this case. *See* J.A. 245–48. The legal issue in this appeal is whether 8x8 is entitled to claim a refund of the FCET. After articulating the applicable standard of review and legal framework, we address this issue below.

### I. Standard of Review and Legal Framework

We review the Court of Federal Claims's "grant of summary judgment de novo." *Frankel v. United States*,

---

[5]   According to the 2006 Notice, I.R.C. § 4291 defines a "collector" as "the person receiving the payment," 2006 Notice, § 2(a)(3), and § 4291 states that "every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment," I.R.C. § 4291.

842 F.3d 1246, 1249 (Fed. Cir. 2016) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Court of Federal Claims Rule 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that "might affect the outcome" of the case. *Id.* The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323.

## II. The Court of Federal Claims Did Not Err in Granting Summary Judgment in Favor of the Government

The Court of Federal Claims stated that "the material facts have been stipulated by the parties and are not in dispute" and that the "sole issues before the [c]ourt are legal ones." *8x8*, 125 Fed. Cl. at 327. The Court of Federal Claims then moved to the legal issue and concluded that 8x8 lacked standing to seek a refund because it did not pay the FCET; it only collected the FCET from paying customers and then remitted that money to the IRS. *See id.* at 327–28. In reaching this conclusion, the Court of Federal Claims noted "the undisputed facts establish that 8x8 did not bear the economic burden of the taxes it remitted to IRS." *Id.* at 328; *see* J.A. 247 (stipulating to the language of the "TAXES" provision included in the Terms and Conditions).

8x8 argues that "under the special statutory rules governing prepaid arrangements, 8x8 is not a collector." Appellant's Br. 45. It contends that "the excise tax was 'treated as paid,' when 8x8 received the transfer of services from Level[(3)] and Global Crossing, and 8x8 was 'the person paying for such services.'" *Id.* at 46 (quoting

I.R.C. § 4251(a)(2), (d)(1)(B)). According to 8x8, it "was the 'transferee'[6] and thus the 'person liable for the tax.'" *Id.* (quoting 26 C.F.R. § 49.4251-4(d)(1)). 8x8 further argues that I.R.C. § 6415 does not bar its refund because "8x8 is not a 'person who collected' excise tax," *id.* at 49; instead, 8x8 "paid the tax" and "pass[ed] along and separately state[d] the amount of accrued federal excise tax on its customers' bills," *id.* at 51. Thus, it contends that this passing along is "an utterly commonplace economic transaction in which a retailer subjected by the [G]overnment to higher costs of doing business raises customer prices." *Id.*

"[T]he ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax." *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), *modified*, 284 U.S. 599 (1932) (internal quotation marks and citation omitted). To sue for a refund, "it is incumbent upon the claimant to show that the United States has money which belongs to him." *Id.* (internal quotation marks and citation omitted). I.R.C. § 6415 allows a "person who collected the tax and paid it" to the IRS to seek a refund only if "such person establishes . . . that he has repaid the amount of such tax to the person from whom he collected it[] or obtains the consent of such person to the allowance of such credit or refund." I.R.C. § 6415(a).

We agree with the Court of Federal Claims that 8x8 is a collector of the FCET and, as a collector, 8x8 has failed to fulfill the necessary requirements of I.R.C. § 6415(a). The overwhelming weight of the record demonstrates 8x8's role as a collector and refutes 8x8's argument to the contrary. *See* J.A. 139 n.1 (IRS stating in the Notice of

---

6 "Transferee" is defined as "the first person that is not a carrier to whom a [prepaid telephone card] is transferred by a carrier." 26 C.F.R. § 49.4251-4(b) (2006).

Proposed Adjustment that "8x8 admitted . . . that it collected an additional 3% [excise tax] from its [customers] in addition to the monthly service fee" and that 8x8's Fiscal Year 2006 Form 10-K filing with the U.S. Securities and Exchange Commission stated "that it ceased 'collecting and remitting' Federal Excise Taxes in June 2006 pursuant to the [U.S.] Treasury Department's news release addressing collection of the [excise tax]"), 348 (Form 10-K filing stating that 8x8 "do[es] not collect state and federal telecommunications taxes, *other than federal excise tax*" (emphasis added)), 389 (8x8's Chief Financial Officer admitting the same). The Terms and Conditions to which customers agreed also states that "[p]rices for the Services do not include any . . . excise . . . or other similar taxes. All such taxes shall be paid by End User and will be added to any amounts otherwise charged to End User . . . ." J.A. 247; *see* J.A. 248 ("Each of the monthly invoices separately stated the [excise tax] applicable to the telephone service used by the customer that month.").

The record also demonstrates that 8x8 failed to fulfill the requirements of I.R.C. § 6415(a) because 8x8 neither refunded its customers the FCET nor obtained their consent to seek the refund. First, the record shows that 8x8 did not refund the FCET that it collected from its customers. *See* J.A. 247 ("[A]pplicable taxes may not be refundable."). The only discussion of refunding money to customers appears when 8x8 addresses its obligations to customers when services are terminated. Yet, this only covers refunding money used to purchase a DTA and any money paid for services provided by 8x8; it does not cover the FCET. *See* J.A. 247 ("In the event a customer terminated its 8x8 service within the first 30 days, 8x8 would refund the purchase price of the DTA to the customer and the customer would return the DTA to 8x8."), 247–48 ("If a customer decided to terminate its prepaid service during the month, it was 8x8's policy to continue the service for

the remainder of the month which had already been prepaid. Occasionally, if a customer requested a refund, 8x8 would refund the monthly charge to the customer, to avoid arguing over the service fee."). Second, 8x8 does not dispute that it did not obtain its customer's consent to seek a refund. *See generally* Appellant's Br.

Moreover, 8x8 confirmed its intention to keep any FCET it may be refunded. *See* Oral Arg. at 0:32–0:53, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 16-1959.mp3. In fact, 8x8 and the Government stipulated "[a] majority of 8x8's customers probably received refunds from the IRS of the [excise tax] that 8x8 collected from them during the period." J.A. 248. This stipulation supports the conclusion that 8x8 did not obtain consent from its customers to seek the FCET. The record unquestionably demonstrates that 8x8 failed to comply with the requirements of I.R.C. § 6415(a) and, thus, may not seek a refund pursuant to § 6415(a). *See Lewis*, 284 U.S. at 283.

Although 8x8 fails to meet the requirements of I.R.C. § 6415(a), it may nevertheless obtain a refund if it had "borne the economic burden of the taxes by paying them out of [its] own pocket and had not collected them from members." *Epstein v. United States*, 174 Ct. Cl. 1158, 1174 (1966) (footnote omitted). The question that must be answered here is whether 8x8 passed the expense on to its customers or bore the burden of the tax by paying it. *See Gumpert v. United States,* 155 Ct. Cl. 721, 725 (1961) ("If [the collector] has passed this expense on to [its] customers, then [the collector] does not have the proper standing to maintain" its refund suit.); *see also United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402 (1934) ("If [the taxpayer] has shifted the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest; and in such a situation[,] there is nothing arbitrary in requiring, as a condition to refunding the tax to him, that he give a bond to use the refunded money in reimbursing them.").

8x8 contends that it paid the excise tax by "rais[ing] customer prices." Appellant's Br. 51. Whether an increase in pricing is tantamount to the payment of a tax generally presents a question of fact, *see Worthington Pump & Mach. Corp. v. United States*, 129 Ct. Cl. 87, 93 (1954), and the parties stipulated to the facts relevant here. Our predecessor court in *Worthington*, the seminal case on this question, laid out several factors to consider. For example, "[c]ourts have laid great stress on an increase in price associated with the imposition of tax as indicating a shift of the tax burden" to the customers. *Id.* at 93–94 (citations omitted). "In some cases the price increase was explained by other causes, such as a rise in other costs, and the tax was held not to have been passed on." *Id.* at 94 (citations omitted). "Where there was no increase in prices and there were other facts indicating that the seller had absorbed the tax, it was held that the tax was absorbed." *Id.* (citations omitted). Finally, an intent or attempt "to pass on the tax" can be "taken as some evidence of its actual occurrence" when better evidence is absent. *Id.*

A comparison of these principles against the undisputed record reveals that 8x8 did not bear the economic burden of the FCET. Rather, the record demonstrates that "[p]rices for the Services do not include . . . any excise, federal, . . . or other similar taxes." J.A. 247. The customer "would first have to accept 8x8's Terms and Conditions of Service" and "[t]hen the customer would provide 8x8 with a credit card which would be used to *pay all* charges, fees, and *taxes* for the 8x8 service." J.A. 247 (emphases added). Additionally, "[e]ach of the monthly invoices separately stated the [FCET] applicable to the telephone service used by the customer that month." J.A. 248. These stipulated facts demonstrate that 8x8 passed the FCET on to its customers. The FCET was a separate line item on the monthly bill, and the Terms and Conditions explicitly stated the customers were responsible for

the FCET. This leaves no room for doubt that 8x8 did not bear the economic burden of the FCET. Rather, 8x8 is seeking to recover costs borne by its customers, in direct contradiction of the Internal Revenue Code.[7] There is no genuine issue of material fact, and 8x8, a collector of the FCET, does not have standing as a matter of law to seek a refund of the FCET paid by its customers.

CONCLUSION

We have considered 8x8's remaining arguments and find them unpersuasive. Accordingly, the decision of the U.S. Court of Federal Claims is

**AFFIRMED**

COSTS

Costs to Appellee.

---

[7]     8x8 makes vague references to unjust enrichment. *See* Appellant's Br. 49, 54–56 (arguing that barring a refund to 8x8 would mean that no one could collect a FCET refund and, therefore, the Government would be unjustly enriched). To the extent 8x8 alleges a separate equitable claim for unjust enrichment, this argument fares no better. 8x8 did not allege a claim for unjust enrichment in its Complaint, *see* J.A. 19–29, and the Court of Federal Claims does not have jurisdiction over such unjust enrichment claims, *see Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) (explaining that the Tucker Act generally does not provide jurisdiction over claims for equitable relief); *Cleveland Chair Co. v. United States*, 214 Ct. Cl. 360, 364 (1977) ("Unjust enrichment cannot in itself be the basis for a recovery here, for it lacks the consensual element needed to find a contract implied in fact, and only provides support for the remedial device known as a contract implied in law, over which this court has no jurisdiction." (citation omitted)).